# Matthews *v.* The State.

*Indictment for Rape.*

| 55 | 187 |
|----|-----|
| 98 | 83 |
| 55 | 187 |
| 100 | 95 |
| 55 | 187 |
| f135 | 61 |
| 55 | 187 |
| 142 | 3 |

1. *Confessions; sufficiency of uncorroborated.*—A confession, not corroborated
by independent evidence of the *corpus delicti*, is not sufficient to support a con-
viction of felony.

FROM the Circuit Court of Butler.
Tried before the Hon. JOHN K. HENRY.

[Matthews v. The State.]

The indictment in this case contained only one count, which charged that the defendant committed a rape on Martha E. Locke. He pleaded not guilty, and was tried on issue joined on that plea; was, by the verdict of the jury, convicted of an assault with intent to commit a rape, and was sentenced to imprisonment in the penitentiary for the term of five years. The evidence adduced on the trial, and the several rulings of the court in relation thereto, are thus stated in the bill of exceptions :

"The State introduced Dr. W. N. Street as a witness, who, having testified that he was acquainted with the defendant, and with the prosecutrix, Martha E. Locke, was asked by the solicitor, if he had at any time a conversation with the defendant, about the alleged charge of rape; and replied, that he had. The State then asked said witness to state said conversation; to which question the defendant objected, because the *corpus delicti* had not been proved, and until that had been first established no confession could be received. The court overruled the objection, and the defendant excepted." The witness then stated that, " in the spring or summer of 1874, some four or six months after the alleged offense was said to have been committed," he was called professionally to visit the said Martha E. Locke, at the house of David Ellington, her father; that on his return, he sought an interview with the defendant, and repeated to him all the statements and declarations which the said Martha had made to him, giving a circumstantial account of the commission of the alleged offense by the defendant, at a room in a hotel in Greenville, in December, 1873, while the defendant was returning with her from a lunatic asylum; and that the defendant, in reply to his communication, said, "I did not penetrate her."

"The State then asked the said witness, if the said Martha E. Locke, in said conversation, said any thing about making complaint, and if he told the defendant what she said; to which he replied, that he did. The defendant objected to what Martha E. Locke had said to the witness, although he told the defendant—1st, because it was simply hearsay; 2d, because it was not calculated to call for any reply from him; 3d, because, she not having been examined as a witness, the fact that she made complaint could only be evidence to corroborate her testimony, and was illegal and inadmissible in this case. The court overruled the objection, and the defendant excepted. The witness then stated, that he told defendant, at the same time, that Martha E. Locke said, in the conversation above detailed, that she told her father all about it the day after she got home; to which answer the

VOL. LV.

defendant objected, on the same grounds as to the question, and reserved an exception to the overruling of his objection by the court." This witness having been cross-examined by the defendant, "and then turned over to the State for further examination in rebuttal, was asked to state all that said Martha E. Locke told him in said conversation. To this question the defendant objected, he not being present at said conversation, on the ground that the same was illegal and inadmissible—that it was the unsworn declarations of the prosecutrix, and was incompetent. The court overruled the objection, and the defendant excepted." The witness having, in reply, repeated his conversation with said Martha E. Locke, substantially as he had before stated it, " he was then asked whether the said Martha E. Locke, in said conversation with him, said any thing as to having made complaint about the defendant's treatment of her. The defendant objected to this question, on the ground that it called for illegal and incompetent testimony, the prosecutrix not having been examined; but the court overruled the objection, and allowed the witness to answer the question; to which the defendant excepted. The witness said, in reply to the question, that said Martha E. Locke, in said conversation, stated that she told her father, the day after she came home, all about the way defendant had treated her."

" The State then introduced W. R. Tomerline as a witness, who testified, that he was acquainted with the defendant, and also with said Martha E. Locke; and he was then asked by the State's counsel, if he had any conversation with the defendant as to the alleged rape by him upon said Martha E. Locke, to state what that conversation was; to which question, and also to the answer to the same, the defendant objected, because the same was illegal and inadmissible—that the *corpus delicti* had not been otherwise proved, and, until that was first established, any statements or confessions by the defendant were inadmissible. The court overruled the objection, and allowed the witness to answer the question; to which ruling the defendant excepted." The witness then stated, that the defendant sought an interview with him "in the spring or summer of 1874," saying that he "wanted to tell him all about that woman scrape;" and then repeated what the defendant had said to him on that occasion, giving an account of what had passed between him and said Martha at the hotel in Greenville, admitting that he had procured one room for them to occupy, and that he had attempted to get into bed with her, when, as he said, "she kicked up," and he then went back to his own bed; and alleging, in excuse, that the girl made the first improper advances. At the conclu-

sion of the defendant's statement, as the witness testified, the witness said to him, "Gus, they say, that she says you ravished her;" and that the defendant replied. "If she says I did it effectually, she lies;" also, that the defendant said, "It would have been all right, if she had not fondled with me, and my passion had not overcome me."

"The State then closed, and the defendant moved the court to exclude from the jury all the testimony offered by the State as to confessions of the defendant, on the ground that, outside of the confessions, there was no sufficient legal evidence proving the *corpus delicti*. The court overruled the motion, but stated, that the whole statements, both of the defendant and of the prosecutrix, would be allowed to go to the jury for what they were worth ; to which ruling of the court the defendant excepted."

It is not necessary to notice the other rulings of the court to which exceptions were reserved by the defendant.

GAMBLE & BOLLING, L. D. BROOKS, and WATTS & SONS, for the defendant, cited *Regina v. Gutteridge*, 9 Car. & P. 471; *Regina v. Megson*, 9 Car. & P. 420; *Regina v. Nicholas*, 2 Car. & Kir. 246; *People v. McGee*, 1 Denio, 21; *Leoni v. The State*, 44 Ala. 112; 1 Greenl. Ev. § 217 ; 3 Ib. § 213 ; Roscoe's Cr. Ev. 37 ; 2 Russell on Crimes, 824, note ; *State v. Guild*, 5 Halst. ; *Long's case*, 1 Hayw. 455 ; 1 Stark. Ev. 574, top ; *Mose v. The State*, 36 Ala.

JOHN W. A. SANFORD, Attorney-General, for the State.

BRICKELL, C. J.—The principal question the record presents—the sufficiency of a confession, not corroborated by independent evidence of the *corpus delicti*, to support a conviction of felony—is of the first impression in this court. We have endeavored to give it as thorough an examination, and as full deliberation, as its practical importance in the administration of the criminal law demands.

Text-writers usually classify confessions as judicial and extra-judicial. The first comprehends confessions made before a committing magistrate, having authority to take and certify the examination of persons accused of a criminal offense, when the preliminary inquiry is being made, whether such offense has been committed, and whether there is probable cause to believe the accused was the guilty agent in its commission. It also comprehends the plea of guilty, deliberately interposed on the arraignment for final trial, after admonition and advice from the court, against its interposition. Such confessions are, without doubt, sufficient of them-

selves, unaided by any corroboratory or confirmatory evidence of the *corpus delicti*, to sustain a conviction. They are deliberately made, and being reduced to writing, subscribed by the prisoner, certified by a magistrate, or consisting of a solemn plea, made at the bar of the court, and entered of record, are precisely identified, and free from the inherent infirmity of all mere verbal confessions, made out of court, resting in the memory of witnesses, and depending for their value upon the fidelity and accuracy of their repetition.—1 Green. Ev. § 316.° In our law, there is no other judicial confession, than the plea of guilty, interposed on the arraignment for final trial, which the court would be inexcusably derelict in duty, if it permitted entered of record, or received as evidence of guilt, until the prisoner had been fully informed of its effect and consequences, and admonished and advised to stand upon the presumption of innocence, which the law in its humanity indulges in his favor, and requires shall be repelled only by clear and convincing evidence of guilt. All other confessions, whether express, full, free, and voluntary, verbal or written, or mere admissions to be implied from conduct or words, are extra-judicial.

The sufficiency of such confessions, at common law, to warrant a conviction, when not corroborated by other evidence of the *corpus delicti*, is a matter of grave doubt, if it was to be determined only by a consultation of English text-writers and adjudications. The foundation of every criminal accusation, the primary fact, is the *corpus delicti*—the fact that the particular offense, whether it be treason, murder, or other felony, or a misdemeanor, has been committed. Without this fact, there can not be a guilty agent. It was said by Lord HALE: "I would never convict any person for stealing the goods of a person unknown, merely because he would not give an account how he came by them, unless there was due proof made that a felony had been committed. I would never convict any person of murder, or manslaughter, unless the fact were proved to be done, or at least the body found dead.".

Mr. Wills, in his work on Circumstantial Evidence, says: "It may be doubted whether justice and policy ever sanction a conviction, where there is no other proof of the *corpus delicti* than the uncorroborated confession of the party." Blackstone quotes with approbation the rule laid down by Lord HALE, as "most prudent and necessary to be observed." Starkie speaks of a voluntary confession, as "one of the strongest proofs of guilt; for it can not be supposed that a person really innocent would *voluntarily* subject himself to infamy and punishment." The justness of the observation

[Matthews v. The State.]

is apparent, and can not be evaded. When the confession is merely verbal, we can not, however, avoid the reflection, that its precise scope and extent depends on the memory of the witness, the accuracy with which he repeats it, the understanding he had of the words spoken, and other considerations which, of necessity, detract from the value of the evidence of it, and render the conscientious trier of facts reluctant to make such evidence the sole basis of a verdict of guilt. He proceeds: "A prisoner may be convicted upon his own confession, without other evidence."—2 Stark. Ev. 39. In Joy on Confessions, it is said, "But, whatever difference of opinion exists in respect of the weight which ought to be attached to evidence derived from a confession; yet, where it is admissible, and satisfactorily proved, it is deemed sufficient by the English law to convict a prisoner, even capitally, without the aid of any corroborative testimony of his having committed the offense with which he is charged."

In 2 Russell on Crimes, the rule is stated broadly: "The highest authorities have now established, that a confession, if duly made, and satisfactorily proved, is sufficient alone to warrant a conviction, without any corroborating evidence *aliunde.*"—2 Russ. 825. The decisions cited by each of those authors have been carefully scrutinized by judges and textwriters in this country. It is said by Mr. Greenleaf, that in each of them *there was some corroborating circumstance.*—1 Greenl. Ev. § 217.

In the United States, there is almost an unbroken current of decision against the sufficiency of extra-judicial confessions, to support a conviction, the *corpus delicti* not being otherwise proved; "and this opinion," says Mr. Greenleaf, "certainly best accords with the humanity of the criminal code, and with the great degree of caution applied in receiving and weighing the evidence of confessions in other cases." Mr. Wharton says: "Any voluntary confession, made by a defendant, to any person, at any time or place, is strong evidence against him; and if satisfactorily proved, when there is proof of the *corpus delicti*, sufficient to convict according to the common law, without any corroborating circumstances. But, in this country in particular, there is a growing unwillingness to rest convictions on confessions alone."—1 Am. Cr. Law, § 683.

In *Long's case* (1 Haywood, N. C. 455), which was an indictment for horse-stealing, the earliest case in this country we have found touching the question, it was held: "Where A makes a confession, and relates circumstances which are proven already to have existed as related in the confession, that may be evidence sufficient for a jury to proceed upon to

convict the prisoner; but a naked confession, unattended with circumstances, is not sufficient." A later case in North Carolina (*State v. Cowan,* 7 Iredell, 239) seems to regard a voluntary, extra-judicial confession, "which goes to the whole case, as plenary evidence to the jury." The confession on the sufficiency of which the court was pronouncing judgment, was made before a magistrate, and there was evidence in corroboration of it. In *State v. Aaron,* 1 South. (N. J.) 243, it is said by ROSSELL, J., that "it is an established rule, that no person, indicted for a capital offense, shall be convicted on his own confession, without a single circumstance to corroborate it." In *Guild's case,* 5 Hals. 165, it was ruled otherwise; and the confession of a boy of twelve years of age, afterwards retracted, not corroborated in any essential, was held sufficient to support a conviction. Mr. Wharton remarks of this case, that it "stands alone in its character and result."

SAVAGE, C. J., in *People v. Hennesey,* 15 Wend. 147, which was an indictment for embezzlement, reviews carefully the English adjudications, and declares : "The truth is, no court will ever rely upon the confession alone, when it is apparent there is evidence *aliunde* to prove that an offense has been committed."

In *People v. Badgley,* 16 Wend. 53, which was an indictment for forgery, NELSON, C. J., held that evidence of confessions alone, unsupported by corroborating facts and circumstances, is not sufficient to convict; there must be proof *aliunde* of the *corpus delicti,* although such proof need not be conclusive.

WALWORTH, J., in *People v. Porter,* 2 Park. Cr. Rep., held, that a conviction for blasphemy could not be had on the prisoner's confessions, unaided by evidence that the offense had been committed. See, also, *Ruloff v. People,* 18 N. Y. 179; *People v. Burnett,* 49 N. Y. 137.

The Supreme Court of Illinois, in a very carefully considered opinion, held, that a conviction for incest could not be sustained on the prisoner's uncorroborated confessions.—*Bergen v. People,* 17 Ill. 426. In *Fyner's case,* 5 Humph. 383, the Supreme Court of Tennessee held, that conduct on the part of the prisoner, exhibiting clear and satisfactory indications of guilt of some offense, the consequence of which the prisoner was seeking to escape, would not support a conviction of larceny, without satisfactory evidence that the goods had been feloniously taken and carried away. The Court of Appeals of Mississippi, in *Stringfellow's case,* 26 Miss. 157, say : "We believe that the doctrine which holds that, in capital

felonies, the prisoner's confession, when the *corpus delicti* is not proved by independent testimony, is insufficient for his conviction, but accords with the solid principles of reason, and the caution which should be applied in the admission and estimate of this species of evidence." The question has been very fully examined and considered several times by the Supreme Court of Missouri, the latest case being *State v. German*, 54 Mo. 526 (S. C., 14 Am. Rep. 481); and it seems uniformly to have been held, that a conviction on the extra-judicial confession of the prisoner, not corroborated by proof of the *corpus delicti*, is unwarranted. Passing over cases of homicide, the case of *Robinson v. State*, 12 Mo., was an indictment for larceny ; the confession was voluntary, and full, in the presence of the person whose money was alleged to have been stolen, but who did not appear as a witness on the trial. The confession, without proof *aliunde* of the *corpus delicti*, was pronounced insufficient to support a conviction. The case of *State v. Scott*, 39 Mo. 424, was an indictment for robbery, and the same principle was announced.

Without pursuing further a citation of the authorities in this country, it is enough to say, they generally concur in affirming that the extra-judicial confessions of the prisoner, not corroborated by independent proof of the *corpus delicti*, will not justify a conviction for felony. We limit the statement to a conviction for felony, because that is the character of the case we are considering, without intimating any opinion as to the application of the principle to misdemeanors. Nor must we be understood as affirming that the proof of the *corpus delicti* must be as full and conclusive as would be essential if there was no confession to corroborate it.— *Commonwealth v. McCann*, 97 Mass. 580 ; *Same v. Tarr*, 4 Allen, 315 ; *U. S. v. Williams*, 1 Cliff. 53 ; *People v. Badgley, supra; Bergen v. People, supra*. Evidence of facts and circumstances, attending the particular offense, and usually attending the commission of similar offenses—or of facts to the discovery of which the confession has led, and which would not probably have existed if the offense had not been committed—or of facts having a just tendency to lead the mind to the conclusion that the offense has been committed—would be admissible to corroborate the confession. The weight which would be accorded them, when connected with the confession, the jury must determine, under proper instructions from the court.

The evidence against the prisoner is not of an express confession—it is of an admission to be implied from the character of his responses to communications made to him, of the accusations made by the female on whom the violence is charged to have been committed, and from his failure to

meet these accusations with a prompt and explicit denial. The woman is in life, and was, for months after the offense was committed, a resident of the same neighborhood and county with the prisoner. Neither she nor her relatives are shown to have been active in this prosecution. When the trial was had in the Circuit Court, she was residing in another State; but it is not intimated that the prisoner had any agency in producing her change of residence. After the offense, the prisoner was received on friendly terms in her father's family, and by other of her relatives. The admissions to be implied against the prisoner from his silence, and the character of his answers, are of a species of evidence which ought always to be received and acted on with great caution. Its admissibility rests on the probability that a man will repel by denial an unjust, unfounded accusation— that such is the instinct of our nature; and therefore silence, or a response which is not a denial, is a tacit admission of the truth of the accusation. Much depends, of necessity, on the time, place, and manner, in which the accusation is made, or the information of it conveyed, and the person from whom it proceeds, and on the peculiar temperament and characteristics of the person accused. One of perfect innocence may be abashed and humiliated to silence by the accusation of crime, while another, hardened by guilt, would answer with a vehement and seemingly indignant denial. The expressions imputed to the prisoner are of doubtful import, and are not inconsistent with his innocence of the crime charged, though he may have been guilty of gross and shameful impropriety of conduct. Considering all the evidence, we can not believe a conviction resting on it ought to stand. There was evidence (if the offense was committed) when the prosecution was commenced, the State could have procured, which would have been positive and convincing of the *corpus delicti*, and of the prisoner's guilty agency. It ought to have been produced; and it is better that a guilty man should escape, than that a precedent should be introduced, which may press hardly hereafter on the innocent.

The motion to exclude the evidence of the witnesses Street and Tomerline ought to have been sustained. For the error in overruling it, the judgment must be reversed, and the cause remanded. The prisoner will remain in custody, until discharged by due course of law.