(94 South. 55)

## McCULLARS v. STATE.   (7 Div. 267.)

(Supreme Court of Alabama. June 30, 1922. Rehearing Denied Oct. 12, 1922.)

1. Criminal law ⊂⊃409, 517(4)—Independent evidence of "corpus delicti" sufficient to authorize introduction of confession or admission.

In a prosecution for homicide, independent evidence of the corpus delicti *held* sufficient to authorize the introduction of admissions, confessions, or declarations by defendant; corpus delicti meaning the actual commission by some one of the particular crime charged.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corpus Delicti.]

2. Criminal law ⊂⊃531(1)—State must overcome presumption that confession was not voluntary.

Confessions are prima facie inadmissible, and the burden rests on the state to overcome the presumption of law that they are obtained by undue influence, and they must affirmatively appear to have been voluntarily made before they are admissible.

3. Criminal law ⊂⊃520(2)—Confession by defendant while in custody of sheriff held voluntarily made.

Confession of defendant made while in the custody of the sheriff, who was a friend of the family and a relative of defendant, after a conversation with the sheriff in which the sheriff stated "anything you tell me in an official way

will be against you, but any other way that I can be a friend to you, I will be glad to do it" was voluntarily made.

Miller, J., dissenting.

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Charles McCullars was convicted of murder in the second degree, and he appeals. Affirmed.

Merrill & Allen, of Anniston, and Harrison & Stringer, of Talladega, for appellant.

Proximity to the scene of the crime is not sufficient corroboration of an accomplice to permit a conviction of a defendant shown to be near by. 170 Ala. 80, 54 South. 516. The facts recited in the opinion do not show that a crime was committed. 76 South. 413; 49 Ala. 344; 1 Wharton, Crim. Law, §§ 346–348, 434; 167 Ala. 85, 52 South. 417, 28 L. R. A. (N. S.) 536; 76 Ala. 47; 109 Ala. 50, 19 South. 494; 13 Ala. App. 193, 68 South. 687; 12 Ala. App. 119, 68 South. 499; 16 Ala. App. 433, 78 South. 463; 202 Ala. 65, 79 South. 459; 21 Cyc. 909; 14 A. C. J. 1425; 6 Ency. Ev. 746. A promise, inducing a confession, need not be of any particular or specific advantage or favor, but it is enough if in general terms it suggests an advantage to be gained by the confession. 28 Tex. App. 513, 13 S. W. 782, 19 Am. St. Rep. 851; 16 C. J. 726; 55 Ala. 242; 21 S. W. 255; (Tex. Cr. App.) 24 S. W. 288; 16 Colo. App. 6, 64 Pac. 487. The burden was upon the state to show the admissibility of the confession. 58 Ala. 385; 69 Ala. 255; 78 Ala. 425, 56 Am. Rep. 40.

Harwell G. Davis, Atty. Gen., and Marion Rushton, Asst. Atty. Gen., for the State.

Evidence from which it may be reasonably inferred that a crime has been committed affords sufficient preliminary proof of the corpus delicti to render a confession otherwise unobjectionable admissible in evidence. 133 Ala. 145, 31 South. 806, 91 Am. St. Rep. 21; 55 Ala. 187; 90 Ala. 602, 8 South. 858, 24 Am. St. Rep. 844; 100 Ala. 94, 14 South. 868; 104 Ala. 68, 16 South. 107, 53 Am. St. Rep. 24; 207 Ala. 444, 93 South. 460; 16 C. J. 737; 1 Wharton, Crim. Law, 450. The promise which will render a confession involuntary must have relation to the legal consequence of the offense itself; mere collateral promises will not suffice. 135 Ala. 1, 33 South. 329.

MILLER, J. The defendant, Charles McCullars, was indicted and tried for killing Worley Loudermilk, under circumstances constituting murder in the first degree; he was convicted by the jury of murder in the second degree, and his punishment was fixed by them at 21 years imprisonment in the penitentiary; and from the judgment and sentence of the court, the defendant appeals.

The record presents two questions for the consideration of the court. They are the only ones argued and insisted on by appellant, and, after reading the entire record, we think they are the only ones necessary for us to treat in this opinion.

Was there any independent evidence of the corpus delicti to authorize the introduction in evidence of confessions corroborating it, claimed to have been made by the defendant? If so, then were the confessions voluntarily made by the defendant?

"A confession, not corroborated by independent evidence of the corpus delicti, is not sufficient to support a conviction." Johnson v. State, 192 Ala. 686, 68 South. 1018; Hill v. State (Ala. Sup.) 93 South. 460;[1] Matthews v. State, 55 Ala. 187; Smith v. State, 133 Ala. 145, 31 South. 806, 91 Am. St. Rep. 21; Stringer v. State, 135 Ala. 60, 33 South. 685.

This court, in Hill v. State, 207 Ala. 444, 93 South. 460, stated:

"It must be considered as settled that inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti."

See, also, Matthews v. State, 55 Ala. 187; Ryan v. State, 100 Ala. 94, 14 South. 868; 16 Corpus Juris, § 1514, p. 737.

This is practically the same as the general rule as found in 16 Corpus Juris, p. 771, § 1579:

"Extrajudicial admissions, declarations, or confessions of accused are not of themselves sufficient to establish the corpus delicti, although they may be considered in connection with other independent evidence in determining whether the corpus delicti is sufficiently proved." Matthews v. State, 55 Ala. 187.

Corpus delicti means "the body of the crime or offense"; "it means the actual commission by some one of the particular crime charged"; and in this case it means that the deceased was unlawfully killed by some person. 16 Corpus Juris, p. 771, § 1578; White v. State, 49 Ala. 344.

Deceased, Worley Loudermilk, was running a restaurant in Anniston in December, 1921. He was married, had three children, and they lived in rooms upstairs—located on the same street a few doors from his restaurant. The rooms were entered by stair steps from the sidewalk. About 11 o'clock p. m. of December 18, 1921, there were cries and screams from persons in his room. The voice of a person,

[1] 207 Ala. 444.

near the entrance at the steps on the sidewalk, stated "Get an officer." The 'person who heard the screams and the voice at the steps on the sidewalk, went up to the rooms. The deceased, his wife, and children were there; he was sitting on the side of the bed; he was bleeding freely from a wound—a cut —in his neck. There was blood on the sheet, floor, his night clothes, and his body. The wound was in his neck, and about two inches long. It cut his windpipe open; and went into it about half an inch. It was made with a sharp instrument. There was no evidence of a sharp instrument near him in the room. He was rushed to a hospital and died from the wounds in about an hour and a half. His body was carried from there to the residence of his mother in Talladega county.

The defendant had, three or four weeks previous to this time, been working with deceased in the restaurant, and occupied a room near him and his family. There was evidence that defendant left McFall, in Talladega county, late in the afternoon of· December 18, 1921, on a train going towards Anniston. He was seen in Anniston that night, about 8 o'clock, near the restaurant of deceased, and returned from Anniston to .McFall on the engine of a freight train that night between 10:30 and midnight. The sheriff of Calhoun county arrested him in Talladega county at the home of the mother of deceased, where the body had been taken, and carried him from there to his office in Anniston. This was on the night of December 19th. When he reached the sheriff's office, the defendant was examined; blood stains appeared on his hat, coat sleeves, shirt, handkerchief, and pocket knife. There was evidence that these were the clothes he had on the night before. These clothes were on the person of the defendant, and the knife was in his pocket. There were scratches on his face and neck. The defendant informed the sheriff he had been killing hogs and got the blood on him in that way.

[1] There appears in the record sufficient independent evidence of the corpus delicti to authorize the introduction in evidence of admissions, or confessions, or declarations by the defendant, if they were voluntarily made by him. The sheriff testified:

"None of us threatened him. We never have threatened him. We did not try to coerce him or·promise him anything. We did not promise to help him out. I said to him, 'I hate this thing because I have known your people a long time and I am a little kin to your father, your father is a little distant relation of mine, and I have known the family a long time, and I hate it.' That is one of the things I said to him. Another thing I told him in my office was, I said, 'I have been working on this thing all day and would like to know the truth of it. Now, I want to tell you before you tell me anything, that anything in my official way will be against you, anything you tell me, but any other way

that I can be a friend to you I will be glad to do it.' I told him any statement that he made would be used against him. * * * Among some of the things I told him was 'anything I can do outside of my official capacity I will gladly do for you, but I will not employ any lawyer or spend any money for you.' I said, 'I want you to understand that I am not hiring you to do anything. I can't hire you nor I can't use any influence. I want you to understand that I am not going to spend any money on you or hire any lawyer, and what you tell me will be against you, but any other way I can be a friend to you I will be glad to do it.'"

The defendant objected to any statement or confession made by defendant because the corpus delicti has not been proven, and the statement called for is not shown to have been voluntary. The objections were overruled by the court, the defendant excepted to the ruling of the court and the witness testified:

"He said he was in that room, and when Loudermilk came in he got under the children's bed and stayed there until he thought Loudermilk was asleep, and that the defendant then undertook to get out of the room, and as he passed by the bed Loudermilk struck a match and McCullars undertook to grab the light. That they then tussled for several minutes. He told me they had a terrible tussle. He said Loudermilk had him down twice; said he nearly choked the life out of him twice. There were several scratches on his neck. * * * The defendant said when he heard Loudermilk coming he either got under the bed or behind it. He said the lady was in there and the children in the other room. He said Mrs. Loudermilk was there. The children were in the little room and Mrs. Loudermilk in the room with him."

In Bonner v. State, 55 Ala. 245, Justice Stone, speaking for the court, wrote:

"In that jealous care which the law exercises at all times in protection of life and liberty, in the tender regard it pays to human weakness and frailty, it is laid down as one of the cardinal rules of evidence, that confessions of guilt shall not be received against a prisoner, until it is first affirmatively shown that they were made voluntarily. They are prima facie inadmissible, and the onus rests on the prosecution to repel the imputation of undue influence. Any inducement of profit, benefit, or melioration held out; any threat of violence, injury, increased rigor of confinement, or any other menace which can inspire alarm, dread, or the slightest fear, is enough to exclude the confession, as not voluntarily made. The law cannot measure the strength of human fortitude or will to resist importunity, persuasion, or proffered alleviation, on the one hand, or threats, no matter how slight, on the other. Hence, to justify their admission, confessions must be voluntary in fact."

The witness was sheriff of the county, the defendant was under arrest, in his custody; he told him he was related to him, that he would like to know the truth of it, any other·

way than an official way "that I can be a friend to you I will be glad to do it."

[2] Confessions of an accused are prima facie inadmissible; the burden rests on the state to overcome the presumption of law that they are obtained by undue influence; and they must affirmatively appear to the court to have been voluntarily made by the defendant before they are admissible as evidence for the consideration of the jury. Bonner v. State, 55 Ala. 245; Redd v. State, 69 Ala. 259; Campbell v. State, 150 Ala. 73, 43 South. 743.

[3] This conversation of the sheriff with the defendant, the sheriff being a friend of the family and a relative of the defendant, in which he states to the defendant that "any other way that I can be a friend to you I will be glad to do it," may have induced the accused to believe he would receive a benefit from him or may have induced him to believe that he was to receive some proffered alleviation or assistance from him, and on this account this confession was probably involuntarily made by the accused. The confession of the defendant made after that conversation with the sheriff was not admissible. This confession after that conversation with the sheriff does not affirmatively appear to us from the entire evidence to have been voluntarily made by the defendant; and as this onus rested on the prosecution, we must declare the court erred in permitting that confession of the defendant to go to the jury.

Upon the question of the admissibility of the confession, the foregoing represents the views of the writer only; but the other members of the court entertain the view that the trial court will not be reversed for its admission. The opinion of the majority is expressed by Justice GARDNER, as follows:

"The majority think this case comes within the influence of the following principle: 'The promise which will render a confession involuntary in the eyes of the law must have relation to the legal consequences of the offense itself; it must involve some assurance of benefit to the defendant in respect of the crime under inquiry, as that he will not be prosecuted or that his punishment will be mitigated and the like. The mere collateral benefit of protection from the personal violence of those who acted with him in the commission of the crime will not suffice.' Hunt v. State, 135 Ala. 1, 33 South. 329. The decisions of this court are uniform to like effect, and the principle was given recognition in the very recent case of Curry v. State, 203 Ala. 239, 82 South. 489. Numerous authorities are cited in these decisions."

The court therefore holds no error was committed, and the judgment of conviction will be accordingly affirmed.

Affirmed.

All the Justices concur, except MILLER, J., dissents.