## RIVERS v. STATE. (1 Div. 243.)

(Supreme Court of Alabama. Dec. 14, 1922. Rehearing Denied Feb. 10, 1923.)

**1. Criminal law ⬅1170(4)—Exclusion of evidence afterward admitted not error.**

In a prosecution for murder, the error, if any, in not permitting a state's witness to testify as to whether he was to receive a reward for searching for intoxicating liquor and a still was cured by permitting the witness afterward to answer the question, and by the fact that his answer was contradicted by a witness for defendant.

**2. Criminal law ⬅531(3)—Evidence held sufficient to render confession admissible.**

In a prosecution for murder, evidence *held* sufficient to show that a written confession by the accused was voluntary, and to render it admissible.

**3. Criminal law ⬅531(3)—All confessions prima facie inadmissible.**

All confessions by a defendant in a criminal case are prima facie inadmissible as evidence, and, on objection being made to their admission, should not be allowed to go to the jury until the court is satisfied by evidence that they were voluntarily made.

**4. Criminal law ⬅1129(1)—Assignment of errors not necessary in criminal case.**

Under Code 1907, § 6264, in appeal in criminal cases, it is not necessary to assign errors on the record, as the court must consider all questions apparent on the record or reserved by bill of exceptions.

Sayre, J., dissenting.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Dossy Rivers was convicted of murder in the first degree, and he appeals. Affirmed.

C. M. A. Rogers and Herbert N. Feibelman, both of Mobile, for appellant.

All confessions are prima facie inadmissible, and a predicate must first be laid for the introduction of an alleged confession. 4 Mich. Ala. Dig. 234; 104 Ala. 68, 16 South. 107, 53 Am. St. Rep. 24; 1 Ala. App. 89, 56 South. 30; 139 Ala. 16, 36 South. 1012; 55 Ala. 95. Evidence tending to show bias of a witness should be admitted. Jones on Ev.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(1908) 1052; 125 Ala. 64, 28 South. 92; 38 Ala. 268.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Counsel argue that the predicate laid for the introduction of the confession was sufficient.

MILLER, J. Dossy Rivers was indicted and tried on an indictment charging him with the murder of Carl A. Brill. He was convicted of murder in the first degree, and death was the punishment fixed by the jury. He was jointly indicted with Ed Sullivan, his father-in-law, and Wash Sullivan, his uncle by marriage, for this offense. Each defendant demanded a severance, and a separate trial was granted to each by the court. Dossy Rivers entered two pleas to the indictment on arraignment; they were not guilty and not guilty by reason of insanity.

Carl A. Brill, the deceased, was a deputy sheriff of Mobile county when killed on January 4, 1922. That morning he located a still in Barrow Creek swamp in Mobile county, near Calvert. He found Ed Sullivan, father-in-law of defendant Dossy Rivers, in the woods near the still. He arrested him, and took him to Calvert. The deceased, Ed Sullivan, and Ed Everrett in the afternoon went to the place where the still was located. They found no still, but signs of one, and many empty lard cans, molasses cans, and much beer. Some of the beer was placed in the empty molasses cans, and the remainder was destroyed. They came out on a path leading to a public road from the place, carrying cans with the beer; they were walking in single file. It was the same path used by them in going from the road to the place of the still. A shot was fired from the bushes, and Carl A. Brill, the deputy sheriff, was instantly killed. The fatal wounds were caused by buckshot. Dossy Rivers and Wash Sullivan came from the bushes; each had a gun. There was evidence that defendant Dossy Rivers said as he came up: "I told that s—— of a b—— I would kill him if I ever caught him out here messing with my business." There was evidence also that he (Rivers) told Ed Everrett right then, "What are you doing here?" that "I ought to kill you," and "he told him if he ever did tell it he would kill him."

The evidence on the plea of not guilty by reason of insanity was in conflict. Witnesses for defendant testified that he was peculiar, had fits, and was in their opinion insane. The testimony of the witnesses for the state on that subject indicated he was of sound mind, always had been, and had never shown any evidence of insanity.

[1] The court did not permit the defendant on cross-examination of Ed Everrett, witness for the state, to ask him this question: "Now, did not you go down to hunt that still on the promise from Mr. Brill that he would give you one-half of the shinney that he found?" It is not necessary for us to decide whether this was error, because the court permitted this witness afterwards on cross-examination to answer it by stating, "No, sir; he did not offer to give me anything if I went down there with him;" and Ed Sullivan, witness for defendant, testified: He (Carl Brill, the deceased) "told us (Ed Everrett and witness) to hunt good; that half the shinney we found belonged to us." This could not be reversible error, if error at all, as the witness afterwards answered the question and his answer was contradicted by a witness for the defendant.

[2] The defendant made a statement or confession as to the killing of Carl A. Brill by him. It was reduced to writing by the solicitor for the state, was read over to and by the defendant, and signed by him. This written, signed statement as to the killing of Carl Brill was over objections of the defendant admitted in evidence and allowed to be read to the jury by the court, and exceptions were duly reserved by the defendant to these rulings of the court. The defendant insisted in the court below and in this court that the statement was not voluntarily made by him.

[3] All confessions by a defendant in a criminal case are prima facie inadmissible as evidence. State v. Stallings, 142 Ala. 112, 38 South. 261. When their competency by objection to them is made, they should not be received and allowed to go to the jury by the court until the court is satisfied by evidence that they were voluntarily made by the defendant. Bradford v. State, 104 Ala. 68, 16 South. 107, 53 Am. St. Rep. 24. The evidence before the court whether the confession was voluntarily made by him was as follows:

The defendant was arrested by Deputy Sheriff Blackman about 2 o'clock p. m. on January 6, 1922, at Calvert, and he brought him on to the jail. This deputy testified:

"I was with him all the time from Calvert until we got to the jail;" and "I was with him down to the time that you (the solicitor) talked to him in the jail. I was with him from then continuously down to the time that the solicitor talked with him. He in my presence and hearing, made a statement to the solicitor. Before he made that statement neither I nor any one in my presence or hearing offered him any reward or inducement to get him to make the statement. What he said he said freely and voluntarily. Before me (he) made that statement to the solicitor, the solicitor told him who he was; told him he was the prosecuting attorney. He was warned by the solicitor that he didn't have to make a statement unless he wanted to, and he was also warned by the solicitor that any statement he did make would be used against him on the trial of this case, and after he was so warned and under those conditions and circumstances he made the state-

ment which is now handed to me. I left him for about five minutes. The solicitor was with him during that time. The occasion for my leaving' him was because ·I went to get Wash Sullivan in the jail. I went up to the jail to get Wash Sullivan, and while I was gone the solicitor was with him. I did not get Ed Sullivan also; somebody else got ·him. At all other times I was present and with him."

.Hon. B. B. Chamberlain testified as follows. on this· subject:

"On January 6, 1922, I was solicitor of Mobile county, Ala., and directed the investigation into the killing of Carl A. Brill on January 4, 1922. My recollection is that I was in the sheriff's office on the 6th day of January, when the defendant, Dossy Rivers, was brought to the Mobile county jail by Deputy Sheriff Blackman. I was waiting there for him. 'They had telephoned that they had gotten him and were on their way. He was brought into the sheriff's private office by Deputy Sheriff Blackman. I had a conversation with him in that office in the ' presence of Blackman. · I don't remember that there was any one else there besides us at all. Mr. Holcombe, Sr., was in and out. I was present all the time that Dossy Rivers was in the sheriff's office there, until he made the statement. Neither I nor any one else in that room made any threats against him, nor offered him any inducements or hope of reward. The statement he made was made freely and voluntarily. I told him who I was, and what my business was, and that whatever statement he made could be used against him at the trial of this case, and that he did not have to say a word about it unless he wanted to. I asked him about killing Brill, and he said, 'I didn't do it;' and I said, 'Wash and Ed Sullivan said you did it;' and he said, 'I didn't do it.' I asked Blackman to go get one of the Sullivans, and Wash or Ed was brought in. Both of them were brought in, but I don't know which one was brought in first. I asked Wash who killed Brill, and he said 'Dossy Rivers;' and I said 'All right, take him out.' Then the other one was brought in, either Ed Sullivan or Wash Sullivan. However, the second one was brought in and the same question was asked him, and I said,'Who killed Deputy Sheriff Brill?' and he said, 'Dossy Rivers.' Then they took him out, :and I said to Dossy Rivers, 'I told you that they told it.' I said, 'I will tell you exactly how it happened,' and I told him what the Sullivans had told me. I had a statement from them. Then he said, 'It didn't happen that way.' * * * Then, when I told him how it happened, he said it didn't happen just that way, and he said, 'I will tell you how it happened.' He then told me how it happened, and I reduced it to writing. I asked him the questions, and wrote down his answers. Yes, sir; I wrote it correctly as he gave it. After I wrote it, he ·took it and looked over it, and I read it over to him, too. I saw him sign his name to it, and that is the statement he made."

This was substantially all of the evidence on the predicate. This testimony was sufficient to overcome the prima facie presumption of incompetency of the statement made by

the defendant as evidence, and rendered it admissible. The court did not err in allowing it to be read to the jury. It affirmatively appears from this evidence to have been voluntarily made by the defendant.· Heningburg v. State, 153 Ala. 13, 45 South. 246; Chas. McCullars v. State, 208 Ala. 182, 94 South. 55.

[4] There are some other exceptions in the record reserved by the defendant to the rulings of the court. No errors are assigned on the record. This is not necessary in a criminal case; and we have considered all questions apparent on the record as required by section 6264 of the Code of 1907, and find no reversible error. We do not consider it necessary to discuss these other exceptions in this opinion, as we find no error in them, and they' are not assigned as error, argued or mentioned in the able brief of appellant's counsel.

The record is free from error, and the judgment is affirmed.

Affirmed.

All the Justices concur, except SAYRE, J., who dissents.