DeCARLO, Judge.
Murder, first degree; life.
Alfred Holt was indicted by the grand jury of Jefferson County, and charged with the shooting death of Debra Kay Dabbs.
After a jury trial on January 21,1976, the appellant was found guilty and sentenced to life imprisonment.
This case involves the brutal murder of Debra Kay Dabbs during the early morning hours of March 6, 1975. The appellant, Alfred Holt, did not testify or offer any evidence in his own behalf at trial.
Nathaniel Holt, a fifth grader at Carey A. Tuggle School in Birmingham, Alabama, discovered the body of the victim while on his way to school on March 6, 1975.
*366 Jack Parker was the deputy coroner of Jefferson County Alabama. On the morning of March 6, 1975, he went to Carey A. Tuggle School in response to a “call.” Upon his arrival, he made pictures of the scene and of the body of a white female. He observed some eighteen lacerations on the back of the body and one stab wound in the chest in the heart area. Further, the officer observed several bruises about the area of the head and three bullet wounds in the head.
Later the body was removed to Mercy Hospital and Parker observed an autopsy performed by Jay Glass, another deputy coroner.
Jay Glass, a pathologist assistant at the Mercy Hospital in Jefferson County Alabama, performed an autopsy on the body identified to him as that of Debra Kay Dabbs. Glass testified that he found a number of bruises on the head and torso. He said there were some eighteen separate incise-type wounds on the back and one “stab-like” wound at the midline of the chest. Further, he stated there were three gunshot wounds to the head which he described as being “very close range wounds.” Glass acknowledged that in his opinion, the gunshot wounds would be reasonably calculated to cause death. Glass also stated that smears were taken of the anal, vaginal and oral orifices of the body and each indicated the presence of “sperm.”
During cross-examination, Glass stated he did not find any lacerations of the vaginal area or any signs of forcible entry. However, on further questioning he acknowledged that the absence of lacerations in the vaginal area did not rule out the possibility of sexual assault.
James G. Brown was in Birmingham, Alabama on March 5, 1975, and saw the victim, Debra Kay Dabbs in Duggan’s Lounge. She was “somewhat drunk” at the time. According to Brown, he carried her to the Watergate Lounge. On their arrival she went into the lounge first and when he entered she was at the bar talking to the defendant, Alfred Holt. Brown recognized Holt and testified that “I remembered him from school.” According to Brown, the victim was sitting at the bar and Holt was standing up talking to her. Brown said when he approached them Holt turned to him and said something to the effect, “tell this girl I’ll do what I say I’ll do.” Brown said after the appellant said that, the victim told Brown she was going to leave but would be back in five or ten minutes.
Brown testified that when the appellant left with the victim, three men sitting at a table left also. Brown did not know who the three men were. Brown left the lounge within five minutes after the appellant and victim left and learned of Miss Dabbs’ death after reading the newspaper.
On cross-examination, Brown testified there was no conversation between the victim and himself concerning drugs but she stated that “she was looking for her man.” Further, he said the Watergate Lounge was a predominately black establishment and that Holt and the other three men were black.
L. M. Robbins was a police officer and an evidence technician for the Birmingham Police Department. On the morning of March 6,1975, he went to Tuggle School and made pictures of the scene and nude body of the victim. Several items of evidence were collected and during the trial he identified a diagram that he had made of the scene. Robbins also recalled that sometime after March 6,1975, he had an occasion to fingerprint a 1971 Chevrolet Monte Carlo, bearing the license number 1-52028.
At the conclusion of Officer Robbins’ testimony in chief, the defense did not cross-examine but made the following motion outside the presence of the jury:
“MR. DANIELS: Yes, I have a motion to suppress filed.
“THE COURT: I have never seen it. I didn’t know that such a motion has been filed. Motion to suppress what?
“MR. DANIELS: A motion to suppress physical evidence and testimony evidence that will be presented against Alfred Holt. We would call Albert Wallace.”
*367 While the jury was out of the courtroom a voir dire examination on the motion to suppress was conducted.
Sergeant Albert Wallace of the Birmingham Police Department investigated the death of Debra Kay Dabbs. He testified that James Brown gave a statement that he saw the appellant, Alfred Holt, leave the Watergate Lounge with the victim.
Pursuant to this information, Wallace and another officer went to Jackson, Mississippi to talk to Alfred Holt. Holt at the time was being held in the Jackson, Mississippi jail on a robbery charge from Birmingham. Wallace stated that after asking Holt if he wanted to talk to them, the “Miranda warnings” were read to him. According to Wallace, Holt indicated that he understood those rights and they began to talk to him about the “murder ease.” Holt denied having any knowledge of the murder until confronted with James Brown’s statement. Following that, Holt said he knew Brown recognized him and said; “If I tell you about it, I was not involved in the case what about my robbery charge?” According to Wallace he told Holt; “I’ll do anything I can for you on the robbery, but it’s not my case and I have nothing to do with it, but all I’ll do is anything I can to help you with it.”
Wallace said that Holt admitted being at the Tuggle School on March 5th, and identified the other persons with him at the time. The officer recalled that he also told Holt that if he had nothing to do with the killing he would not be charged for it but would be a witness. He stated that information concerning the Dabbs’ murder was to be given in exchange for assistance on the robbery case.
According to Wallace, Holt stated that a man with the last name of Radford was with him but he could not recall his first name. Wallace testified that Holt did not inculpate himself but said that Radford murdered the girl and had intercourse with her.
Holt was returned to Birmingham and after being advised of his constitutional rights made a second statement. It was after this statement that Holt was formally charged with the Dabbs murder. Wallace said that prior to the making of the second statement, Lt. Kirk advised Sgt. Wallace that any promises made by him to Holt could not be honored. Although Holt had been warned that all promises had been withdrawn, he proceeded to make the second statement at the Birmingham City Jail. In that statement he told the officers where the murder weapon was and discussed the circumstances surrounding the murder.
L. H. Kirk held the rank of Lieutenant in the Birmingham Police Department and was the supervisor of the investigation of the Debra Dabbs homicide. Kirk stated that on the morning of April 14, 1975, he was present when Holt made a statement to Sgt. Wallace. He said that he told Sgt. Wallace, in Holt’s presence, that any promises made by Wallace were not binding.
Officer Jeffery E. Webb was present at the time Holt made his second statement to Sgt. Wallace at the Birmingham City Jail. Webb was involved in the investigation of the Dabbs’ murder. As a result of hearing Holt’s statement, he executed a search warrant for the murder weapon. Webb went to the home of one Larry Poitress to execute the warrant but Poitress was not at home. When Poitress arrived he took the officers to another address where the weapon was recovered from a person named Arthur Brooks.
At the completion of Webb’s testimony the voir dire hearing was concluded. The court overruled the motion to exclude the testimony of the “live witnesses,” whose identity was revealed in the statements. The judge went on to say that Sistrunk could testify and that the court would rule “on all this other business as it comes before me.”
■ Following the court’s ruling, the jury was returned to the courtroom and Willie Sis-trunk was called as a State’s witness.
Sistrunk testified that on March 5, 1975, he went to the Watergate Lounge with Alfred Holt, Luther Bell, and Stephen Rad- *368 ford. He said they had gone to the lounge to get some beer and had ridden in Bell’s car. According to Sistrunk, as he was leaving the lounge he looked over his shoulder and saw Alfred Holt talking to James Brown. Sistrunk said that he went to the car, got in, and when he looked into the rear view mirror saw Holt, Radford and Bell coming down the street with Debra Dabbs. Sistrunk recalled that Holt and Debra Dabbs got into the backseat where he was sitting and Radford and Bell sat in the front.
According to Sistrunk, Bell was driving. When they reached a point on a hill, Holt made the statement; “We’re gonna f_ this bitch.” Sistrunk said he got out of the car and Radford jumped across the seat and started beating Debra Dabbs. He went on to say that Holt was also beating the girl and that she was doing a lot of crying. According to Sistrunk, he could not be sure but he thought Radford and Holt had “sex with her.” He testified they remained there for about five minutes and then drove to Tuggle School. Sistrunk recalled that the girl was “beat unmerciful,” and that her clothes were “about half-way torn off.”
Sistrunk testified when they arrived at Tuggle School, Holt had intercourse with the girl and then asked him “did I want any.” Sistrunk said Holt then got back into the car and threw the girl out. She was completely nude and when she hit the ground she did not move. At that point, according to Sistrunk, Holt said, “we’re going to have to kill this bitch.” Sistrunk replied; “Alfred don’t kill her just take her back down there where you got her from.” Holt answered that “ ‘if you don’t get out of the damn way you’re going to get the same damn thing she gets’ and pulled a pistol on me then.” Sistrunk got back into the car with Luther Bell and saw Alfred Holt point the pistol at the victim and “shoot a hail of bullets.” Further he saw Radford with “knives” and indicated what Radford did with the knives. Sistrunk went on to testify that Holt and Radford were standing over Debra Dabbs at the time Holt was firing the gun and Radford had the knives. When Holt and Radford got back into the car, Radford told Holt that “he missed that bitch.” Holt said, “no, I got that bitch dead in the head.” Radford then turned and said, “yes, but I stuck that bitch in the heart.” Sistrunk recalled that they then took him home and Holt told him that he “hadn’t seen nothing and didn’t know nothing.” That was the last time he saw Holt.
During cross-examination, Sistrunk said that he did not report the incident to the police the next day and that it was not until he was picked up that he talked to the police. According to Sistrunk, he was told that “Alfred Holt was railroading him,” and if he testified he would not be prosecuted for the murder. Sistrunk denied that he and Radford had an altercation and that Holt had asked that the girl be left alone. He recalled that the girl was shot first and that he saw Alfred Holt point the gun and it “fired.” The next thing he saw was a “bunch of knives.” He did not recall seeing a “hook-bill knife” in Luther Bell’s possession. Sistrunk testified that when they drove away from Tuggle High School he was just like a zombie and “I was scared to death.” He denied having intercourse with the victim and said that he did not see any one having intercourse with the girl outside of the car. Further, he said no marijuana was smoked that night and he did not recall any conversation concerning obtaining drugs. He went on to state that the reason he did not call the police that night or the next day was because he was “really scared and upset.”
At the close of the State’s case, the defense made a motion outside the presence of the jury to exclude the prosecution’s evidence on the basis that the State had failed to sustain its burden of proof. Counsel said that the State had sought to “convict on corroborative testimony of an accomplice,” and it was not sufficient to connect the defendant with the crime. The court overruled the motion and stated:
“Willie Sistrunk? Well, let me say this, for the purpose of my ruling, I would rule, even if he were, it would be corroborated by James Brown’s testimony.”
*369 I
It is contended that the extra-judicial statement of the appellant while in jail in Jackson, Mississippi, was involuntary. Counsel argues that it was made in response to a promise by a police officer that he would help the appellant on a pending robbery charge. Counsel insists that this rendered the statement involuntary and the court’s failure to make a definitive ruling on the competency of such statement was error. Further, counsel argues that because the appellant’s out of court admission was involuntarily made, any evidence, whether physical or testimonial, which resulted from such statement should also be excluded.
The basic facts are that Sgt. Wallace had gone to the Jackson, Mississippi jail to question the appellant concerning his knowledge of the Debra Dabbs murder. A warrant that he carried with him was for a pending robbery charge, unrelated to the murder. It is uncontroverted that Sgt. Wallace, in response to appellant’s offer of information on the Dabb’s murder-, promised to help the appellant on the robbery charge.
The threshold question is whether the appellant’s out of court admission was rendered involuntary by the officer’s assurance of help on the pending charge.
Before reaching the issue of volun-tariness, we must first determine whether the extra-judicial statement was in the nature of a confession or an admission.
BLACK’S LAW DICTIONARY With Guide to Pronunciation, (4th ed. 1957), defines the word “confession” as follows:
“A voluntary statement made by a person charged with the commission of a crime or misdemeanor . . wherein he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act or the share and participation which he had in it.”
An admission is defined as:
“A statement by defendant of fact or facts pertinent to the issues tending, in connection with proof of other facts or circumstances, to prove guilt, but which is, of itself, insufficient to authorize conviction.” BLACK’S LA W DICTIONARY With Guide to Pronunciation, supra.
In our judgment the statement made by the appellant in Jackson, Mississippi, was not confessory in nature, but we do hold that it was an inculpatory admission.
The Supreme Court of Alabama in McGehee v. State, 171 Ala. 19, 55 So. 159, indicated there were two classes of inculpatory admissions, one being “those directly relating to the fact of circumstances of the crime and connecting the defendant therewith . . ” The court said that incul-patory admissions in the nature of a confession were subjected to the same rules of admissibility as a direct confession, and were therefore prima facie involuntary. However, the court went on to say:
“. . . but admissions as to purely collateral matters, which are in no sense confessory of guilt, are not within the scope of the rule, and the predicate as far as a confession need not be laid . McGehee v. State, supra.
Under the definition laid down in McGe-hee v. State, supra, we believe that the statement made by the appellant concerning the facts surrounding the Dabbs’ murder was an inculpatory admission in that it had a tendency to connect him with the offense.
Based on these facts, the preliminary proof of the voluntary character of the inculpatory statement and admission was in order. Although the court did not specifically make a definitive ruling on the volun-tariness of this appellant’s out of court admission, its subsequent admission of Sis-trunk’s testimony was tantamount to holding that the appellant’s statement was voluntary.
No serious contention can be made that the testimony of Sistrunk was not the direct result of the appellant’s statement. Once his testimony was allowed, appellant’s motion to suppress was in fact overruled and the court in essence found that the appellant’s statement was voluntary.
*370 We do not mean to be understood as saying that the court did not have to make a ruling under these facts, but we do say that, as a result of its subsequent action, it was equivalent to a ruling.
We are aware that the law in Alabama is well settled that the competency of an extra-judicial confession and inculpatory admission is a preliminary question for the trial court. Luschen v. State, 51 Ala.App. 255, 284 So.2d 282; Wallace v. State, 290 Ala. 201, 275 So.2d 634; Jones v. State, 292 Ala. 126, 290 So.2d 165.
Although it would have been preferable that the preliminary question of voluntariness be ruled on by the trial court under the facts in this case, we do have a substantial compliance with the rule.
We turn to the question of whether appellant’s statement was in fact induced by a promise that would render it involuntary, therefore, inadmissible.
A confession condemned for involuntariness involves the determination of whether a benefit derived from a promise is direct or collateral. The Supreme Court of Alabama in Hunt v. State, 135 Ala. 1, 33 So. 329, held:
“The promise which will render a confession involuntary, in the eyes of the law, must have relation to the legal consequences of the offense itself. It must involve some assurance of benefit to the defendant in respect of crime under inquiry,—as that he will not be prosecuted, or that the punishment will be mitigated, and the like.”
Under this rule, the promise which will exclude a confession or an inculpatory admission must relate to the crime charged. The promise of help given by Sgt. Wallace in no way was related to the Dabbs murder. It was a collateral benefit involving no assurance of benefit to the appellant with respect to the crime under investigation. Pittman v. State, 36 Ala.App. 179, 54 So.2d 630; Smith v. State, 248 Ala. 363, 27 So.2d 495; McCullars v. State, 208 Ala. 182,94 So. 55; Curry v. State, 203 Ala. 239, 82 So. 489.
Under these facts we distinguish the present case from O’Tinger v. State, Ala.Cr. App., 342 So.2d 1343. In that case this court said that a confession induced by an offer to return accused’s boots was involuntary. There the court was concerned with the return of a previously withheld necessity in exchange for a confession. It was a type of physical abuse even though it was of a much lesser degree than where a confession is given in return for food, water, blankets or sleep.
No degree of physical abuse is present in the case under consideration. The promise made concerned a collateral benefit and was in no way related to the crime under inquiry. Under these circumstances, the admission by Holt was voluntary and could have been used during the trial. Any information or evidence accruing as a result of this statement was also admissible.
We have read and examined this transcript and have found no error prejudicial to this appellant. No error appearing in the record, the case is due to be
AFFIRMED.
All the Judges concur.