TYSON, Judge.
Robert N. Hubbard was indicted for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant guilty “as charged in the indictment” and the trial judge set sentence at life imprisonment in the penitentiary.
I
The appellant contends his confession was improperly admitted into evidence before the State established proof of the corpus delicti.
“The traditional rule in Alabama is that a defendant’s confession may not be admitted into evidence until proof of the corpus delicti has been established by evidence independent of the confession. The corpus delicti need not be established solely by direct evidence as circumstantial evidence may suffice. Gamble, McElroy’s Alabama Evidence, § 200.13 (3rd ed. 1977). Equally as established as the rule is an exception to it. That is, if a confession is inadmissible when offered because of failure of proof of the corpus delicti, the error is cured by subsequent proof of the corpus delicti. Cooley v. State, 233 Ala. 407, 171 So. 725 (1937); Floyd v. State, 82 Ala. 16, 2 So. 683 (1886).
[[Image here]]
“In Watters v. State, Ala.Cr.App., 369 So.2d 1262, 1271 (1978), reversed on other grounds, Ala. 369 So.2d 1272 (1979), we stated:
‘... inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti.
[[Image here]]
Tice v. State, 386 So.2d 1180 (Ala.Cr.App.1980).
In the case at bar, the victim, Judge Leonard, testified that on the morning of the robbery, while standing in his kitchen, he just blacked out. When he awoke, he was tied up in a closet and he had blood all over him. He further testified that several things were missing from his home including his billfold which contained approximately $500.00. His car was also missing.
Debra Goodwin, the appellant’s girlfriend, testified that the appellant and Edwin Shropshire came to her house on the morning of the robbery. The appellant told her he had been involved in a fight and he needed to wash the blood off his hands. He said a man had been badly hurt and that he had taken the man’s car.
The appellant led police to the location where he had left the stolen property, the car and the weapon he had used.
Latent fingerprints lifted from the crime scene were identified as those of the appellant’s accomplice, Edwin Shropshire.
We hold the corpus delicti was sufficiently established, independently of the appellant’s confession, either before or after its admission into evidence. Therefore, the appellant’s confession was properly admitted.
II
The appellant argues that Officer Rod Hanvey should not have been allowed to testify concerning an oral statement made by the appellant to Hanvey because it was not voluntarily made. He claims that Han-vey made certain statements to the appel *659 lant which amounted to promises which induced him to make his statement.
Hanvey was asked about those statements during cross-examination and his testimony was as follows:
“Q Did you tell him that you were a preacher?
“A Yes, sir.
“Q And you are of course a minister. Correct?
“A Yes, sir.
“Q Did you tell him you were any different from the rest of the policemen down there?
“A I don’t remember making that statement. No, sir.
“Q Okay. Did you tell him you would try to help him?
“A Do everything that I could to help him spiritually.
“Q Did you tell him spiritually, or did you just say, ‘I’ll do everything I can to help you’?
“A Well, he never did go into it. I told him it would be best if he just got the whole thing off his chest instead of just sitting there holding it in.
“Q Told him it would be best if he told you that?
“A It would be best if he would get his problems off of his chest instead of just sitting there holding that in. He was at the point of tears was the reason I said that.
“Q Okay, this was before he made the statement to you?
“A Correct.
“Q OKay. And you told him it would be best for him, and that you would try to help him.
“A He had kind of broke up was the reason I made that statement to him— emotionally.
“Q And you told him you would try to help him, and that it would be better if he would get it off his chest?
“A Spiritually, yes, sir. I didn’t say I would help him except spiritually.
“Q Did you tell him spiritually, ‘I’ll help you spiritually’?
“A Absolutely.
“Q But you said, ‘I’ll help you if you get it off your chest’?
“A I said, ‘I can help you spiritually. You need to just go ahead and get it off your chest’ ” (R. 126-128).
It is not necessary to analyze this issue in terms of whether there was a promise of a direct or collateral benefit because it is clear that the Alabama Supreme Court in Holt v. State, 372 So.2d 370 (Ala.1978) rendered the collateral benefit rule[1] invalid.
According to the Supreme Court in Holt v. State, supra, the test we must now apply is whether undue influence was used to obtain the confession. As this court stated in O’Tinger v. State, 342 So.2d 1343 (Ala.Cr.App.1977):
“Any inducement of profit, benefit, or melioration held out, or any threat of violence, injury, increased rigor of confinement, or any other menace which can inspire alarm, dread, or slightest fear, is enough to render the confession inadmissible. Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973); Harris v. State, 280 Ala. 468, 195 So.2d 521 (1967).”
Furthermore,
“... [A] confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats nor violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.... A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.”
*660 Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Holt v. State, supra.
Therefore our inquiry must focus on whether the promise made by Hanvey induced the appellant to make the statement. In other words, would the appellant have made the statement if Hanvey had not indicated he could “help the appellant spiritually.”
It is very difficult to look into the mind of a person and determine how certain statements affected that person psychologically. It is next to impossible to say that a person’s free will was overborne by such statements unless the surrounding circumstances are examined.
Officer Hanvey testified that at 1:10 p.m. on November 24, 1982, he read the appellant his Miranda rights. The appellant stated he understood his rights and wished to make a statement. The appellant then made an oral statement to Hanvey which he related to the court during the trial. The statement was not reduced to writing because immediately after the appellant made the statement, he led the police to the location where he hid the property he had taken from Judge Leonard. A similar statement, made later to Officer Surrett, was reduced to writing and introduced into evidence.
Officer Hanvey stated that no promises, threats, hopes of reward or other inducements were made to the appellant in order to obtain his statement other than his statement that he wanted to help him spiritually.
We are of the view that Hanvey’s statement to the appellant did not exert any improper influence on the appellant’s free will, so as to render his confession involuntary. While such statement might potentially induce someone, in another context, to give a confession, we do here hold that it did not happen in the case at bar.
Of course, each such statement must be carefully examined as they arise in future cases. Here, the best evidence that Han-vey’s statement did not induce the appellant to confess comes from the appellant’s own mouth. When the appellant was asked during direct examination whether Hanvey had made any “promises or anything” to him, the appellant stated, No, sir, not at all.” (R., 103).
Therefore, from our examination, we hold the appellant’s statement was made “ ‘.. . freely, voluntarily, and without compulsion or inducement of any sort.’ ” Haynes v. State of Washington, 373 U.S. 503, 514, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963). The appellant’s statement was properly admitted into evidence.
Ill
The appellant’s contention that two guns were improperly admitted into evidence is without merit. The victim of the robbery, Judge Leonard, testified he owned these guns and they were missing from his home after the robbery. Furthermore, the appellant took the police to the location where he had left these guns. The trial judge correctly admitted the two guns at issue into evidence.
We have reviewed the entire record and hold there was sufficient evidence contained therein for the jury to conclude by fair inference, that the appellant was guilty, beyond a reasonable doubt, of robbery in the first degree. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1979), cert. denied 368 So.2d 877 (Ala.1979).
Therefore, the judgment of the trial court is due to be and is affirmed.
AFFIRMED.
All the Judges concur.

. The collateral benefit rule provides that a confession will not be deemed involuntary if the confession is induced by a promise of a collateral benefit and there is no assurance of a benefit to the accused, with respect to the crime at issue. Holt v. State, supra.