342 So.2d 1343 (1977)
Roger G. O'TINGER
v.
STATE.
8 Div. 904.
Court of Criminal Appeals of Alabama.
February 1, 1977.
Rehearing Denied March 1, 1977.
Dwight Duke, Scottsboro, for appellant.
William J. Baxley, Atty. Gen., and Ellis D. Hanan, Asst. Atty. Gen., for the State, appellee.
BOOKOUT, Judge.
Grand larceny; sentence: four years.
The State put on a case of circumstantial evidence which tended to connect the appellant *1344 with the May 7, 1976, burglary of a store in Section, Alabama. In addition to circumstantial evidence, the State introduced a confession by the appellant. In his defense, the appellant put into evidence facts which tended to negate the circumstantial evidence presented by the State. The sole issue to be decided is whether or not the appellant's confession was voluntarily, understandingly and intelligently given without having been induced by offer of reward or the result of coercion and undue influence. McNair v. State, 50 Ala.App. 465, 280 So.2d 171 (1973).
Many of the facts surrounding the appellant's confession were in dispute at trial. However, the following facts were undisputed. The appellant was arrested on the morning of May 7, 1976, at which time his shirt and shoes were taken from him. Some new clothes and a pair of boots were also taken from him.
On May 12, 1976, the appellant was questioned concerning the burglary. At that time the appellant had been without shoes for approximately six days. He had asked for shoes during this six day period, but the shoes were not forthcoming. Due to a lack of shoes, the appellant's feet became sore and infected. When questioned, the appellant stated he would confess to the crime in return for his new boots. The interrogating officer agreed, the confession was given and the boots were returned to the appellant. The confession was admitted into evidence over proper objection.
Jackson County Deputy Sheriff, Freddie Adams, testified in pertinent part as follows:
"Q. When you put him in jail, you took his shoes off, didn't you?
"A. Yes, sir.
"Q. You took his clothes away from him?
"A. Yes, sir.
"Q. And you denied him a phone call; you wouldn't let him call his lawyer, isn't that right? He didn't call nobody, did he?
"A. I don't remember, Mr. Hamlet.
"Q. You didn't let him have a phone call, did you?
"A. I didn't but someone else could have.
* * * * * *
"Q. You took all his clothes except his pants, didn't you, Mr. Adams; you took all of his clothes off him except his pants, didn't you?
"A. Yes, sir; I think so."
Officer George Tubbs, an investigator for the Sheriff's Department, testified outside the presence of the jury that he questioned the appellant on May 12, 1976, and gave him a proper Miranda warning. His further testimony, pertinent to the issue here, is:
"I was talking to him in my office and some other people came upstairs to talk to me, and I asked him to step out of the room until I finished business with these two people; and after these two people left, he came back to the door; he said, `If you will give me my clothes and boots, I will tell you what all happened'; so I couldn't refuse that, and I did."
The appellant testified that he was arrested on the morning of May 7, 1976, and that officers took his shirt and his shoes away from him. His shoes were taken as evidence, and all he had left was a pair of pants. He later obtained part of a shirt, which he described as, "a piece of cloth I got out of the bull pen or out of the jail back there."
Appellant testified that he was kept in jail without shoes or a shirt until he confessed to Officer Tubbs. During appellant's testimony, the following occurred:
"THE COURT: You are telling the Court that the only reason you made any statement was to get a pair of new shoes that were still in the box?
"A. Well, I was trying to get some kind of shoes to put on my feet because my toes were trying to fall off; it's from that dirty jail back there, no shoes; and sores were coming up all over my feet."
*1345 The appellant strongly objected to the admission of the confession into evidence, however, the trial court allowed Officer Tubbs to relate the confession to the jury.
Later in the trial, Officer Tubbs was recalled by the State in rebuttal, and testified in pertinent part as follows:
"Q. Did you knowingly deprive him of any shoes?
"A. I did not.
"Q. Did he ever beg or ask for shoes?
"A. The only time he asked me anything was, about the shoes was like in meeting; when the prisoners are taken out to make phone calls, several are out at a time making calls; he said, `When are you going to give me my shoes?' And I told him, `I am not giving your shoes; they are being held for evidence.'
* * * * * *
"Q. You said his shoes were held in evidence, but he had a new pair of boots in the lobby?
"A. In the office.
"Q. And he didn't get those boots until he made confession to you, isn't that right?
"A. He came in the door and said, `I am going to'
"Q. He got his boots after he made a confession?
"A. He came in the door of my office; and he said, `I will tell you about the whole mess if you will give me those boots.'
"Q. And you said, `Deal'?
"A. I said, `Lay it on me.'
"Q. And you gave him the boots after he told you?
"A. You better believe it."
The law is clear in this area. The confession of a defendant is prima facie inadmissible and the burden of proving that the confession was not obtained through undue influence rests with the State. Any inducement of profit, benefit, or melioration held out, or any threat of violence, injury, increased rigor of confinement, or any other menace which can inspire alarm, dread, or slightest fear, is enough to render the confession inadmissible. Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973); Harris v. State, 280 Ala. 468, 195 So.2d 521 (1967).
In the present case, the evidence is undisputed that the appellant confessed to the crime in return for a pair of boots. The trial judge, at trial, and the State, in its brief, appear to agree that the appellant's confession would have been inadmissible had the interrogating officer initially made the offer to give the appellant a pair of boots in return for a confession. They perceive some distinction in the present case because the appellant made the initial offer. We do not find that to be a meaningful distinction.
The appellant, in the suppression hearing, testified as to the state of his confinement, and as to the condition of his feet, showing the reason he needed some shoes or boots. The State introduced no testimony to contradict that of the appellant on those points.
We attributed no maliciousness to the authorities of Jackson County regarding the appellant's confession. We merely find that from the evidence that the confession was not voluntary within the meaning of Wallace and Harris, supra.
It is probable that many prisoners during medieval days made the initial offer to confess to crimes in order to be released from the "rack." It is also probable that in other times and in other societies, prisoners have made the initial offer to confess in return for food, or water, or clothing, or blankets, or sleep. While the instant case is one of much lesser degree than the examples we set out, the principle is nevertheless the same.
As an analogy, suppose a prisoner is inadvertently left without food for several days, and upon offering to confess, in return for food, is promptly fed immediately after the *1346 confession. Would such a case really be any different than the instant one? We think not. The return of previously withheld necessities such as food, clothing, shoes, blankets or medical care, upon an offer to confess is of such serious constitutional import that it makes little difference whether or not denial of such items was deliberate, or whether the prisoner or the police made the initial suggestion of a confession. To hold otherwise would create an obviously dangerous precedent.
The improper admission of the appellant's confession affected his constitutionally protected right against self-incrimination, which requires a new trial. Article 1, § 6, Constitution of Alabama 1901; Amendments Five and Fourteen, United States Constitution.
REVERSED AND REMANDED.
All the Judges concur except DeCARLO, J., dissents with opinion.
DeCARLO, Judge, dissenting.
In the present case the appellant's involuntariness contention is based on the claim that he spoke to the investigator only after he had promised to give him a new pair of shoes which the appellant had in the jail's office.
The basic question here is what type of promise or inducement would be improper and cause the statement to be involuntary. In Wallace v. State, supra, the Supreme Court of Alabama set out the test for voluntariness. It is whether:
". . . under all the surrounding circumstances, a confession has been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor." (Emphasis added.)
Some of the important factors to be examined in a consideration of the surrounding circumstances are: First, whether the police or the accused made the initial offer of inducement. People v. Steger, 16 Cal.3d 539, 128 Cal.Rptr. 161, 546 P.2d 665. Second, did the influence or promise induce hope or fear in the mind of the accused, Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568, and did it rise to the indignity of the threats, trickery or cajolery condemned in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Third, did the inducement involve some assurance of benefit to the accused with respect to the crime charged. For example, that he would not be prosecuted or that his punishment would be mitigated. Pittman v. State, 36 Ala.App. 179, 54 So.2d 630. Fourth, the underlying facts giving rise to the inducement or promise. See: Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Wallace v. State; Bennefield v. State, 44 Ala.App. 33, 202 So.2d 48, reversed, 281 Ala. 283, 202 So.2d 55, for reasoning at 44 Ala.App. 39, 202 So.2d 54 under West's Headnote Five.
Under the facts before us, the shoes had been taken to preserve them as evidence of a crime. The matter of the shoes as an inducement was introduced initially by O'Tinger and not by the authorities. It did not involve any assurance of benefit in respect to the crime under inquiry or the mitigation of punishment. Any desire of the defendant to confess was entirely self motivated. The promise allegedly made was not an improper influence that would induce hope or fear in the mind of the defendant. Bram v. United States, supra. Further, it did not rise to the indignity of the threats, trickery or cajolery, condemned in Miranda v. Arizona, supra. The allegation concerning the promise of the shoes is insufficient in itself to render an otherwise voluntary confession inadmissible.
It does not seem reasonable to conclude that the appellant should confess to a burglary just to get his shoes.
The trial court heard the evidence and saw the defendant and the officers when they testified. Under the circumstances in the present case the trial judge was in a far better position than this court to determine the voluntariness of the confession.
In view of the foregoing, it is my judgment that the court was correct in holding the confession voluntary.
I respectfully dissent.