Certiorari was granted in this case to consider the application by the Court of Criminal Appeals of the "collateral benefit rule" regarding confessions to the facts of this case. The pertinent facts are reported in Holt v. State,372 So.2d 364 (Ala.Cr.App. 1977).
The collateral benefit rule states that if a confession (or inculpatory admission) is induced by a promise of collateral
benefit, with no assurance of benefit to the defendant in respect to the crime under inquiry, such a promise will not suffice to show that the confession was involuntary. See Smithv. State, 248 Ala. 363, 27 So.2d 495 (1946); McCullars v.State, 208 Ala. 182, 94 So. 55 (1922); Hunt v. State, 135 Ala. 1,33 So. 329 (1903).
The Court of Criminal Appeals found that when asked by the petitioner:
 [I]f I tell you about it, I was not involved in the case, what about my robbery charge,
Sergeant Wallace of the Birmingham Police Department responded:
 I'll do anything I can for you on the robbery, but it's not my case and I have nothing to do with it, but all I'll do is anything I can do to help you with it.
That court held that this was an offer of assistance on another offense and not an offer related to the case under inquiry, hence the confession induced by the officer's offer of assistance was not involuntary in law. Petitioner contends that this decision is in conflict with O'Tinger v. State,342 So.2d 1343 (Ala.Cr.App. 1977).
In O'Tinger the Court of Criminal Appeals reversed a conviction of grand larceny, having found the evidence undisputed that the defendant confessed to that crime *Page 372 
in return for a pair of boots, and recognized no meaningful distinction in the fact that the defendant made the initial offer rather than the interrogating officer. O'Tinger v. State,supra, at 1345. In holding that the admission of such a confession adversely affected his constitutionally protected right against self incrimination, that court stated:
 Any inducement of profit, benefit, or melioration held out, . . . is enough to render the confession inadmissible . . .
In distinguishing the present case from O'Tinger, however, the court stressed the facts that in O'Tinger the boots were a previously withheld necessity, and that this was a type of physical abuse that made the confession given for their return involuntary.
Without addressing the difficult problems this distinction would unleash, i.e., of what is, or is not, a necessity for a prisoner, and which necessities when withheld would or would not be the basis of physical abuse, we must agree with the petitioner that O'Tinger is in conflict with the present case. It cannot reasonably be argued that a promise of a pair of boots, and a promise of help with another offense, both of which having induced confessions, are so distinguishable that the former makes the confession involuntary, but the latter is of no legal effect. Because the boots in O'Tinger were a collateral benefit and not a benefit with respect to the particular crime under inquiry it is clear that the Court of Criminal Appeals in that decision impliedly overruled the collateral benefit rule, whatever the position of that court on the issue presently.
Whether the distinction between a collateral as opposed to a direct benefit is sufficiently meaningful to deserve recognition in criminal jurisprudence is another matter. Any such distinction must fully comply with the well-recognized injunction, that an accused should be free from involuntary self-incrimination. The wide sweep of this limitation upon criminal evidence, and its applicability here, was explained by Mr. Justice White in Bram v. United States, 168 U.S. 532, 542,18 S.Ct. 183, 187, 42 L.Ed. 568 (1897), in which he made an extensive survey of the reasons for the rule and the decisions applying it. He quoted from 3 Russell on Crimes (6th ed.) 478:
 `But a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.' (emphasis added)
Justice White added that "[t]he statement of the rule is . . . in entire accord with the decisions of this court on the subject." He cited Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202,28 L.Ed. 262 (1884); Sparf v. United States, 156 U.S. 51, 55,15 S.Ct. 273, 39 L.Ed. 343 (1895); Pierce v. United States,160 U.S. 355, 16 S.Ct. 821, 40 L.Ed. 454 (1896); and Wilson v.United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090
(1896). It must be conceded, however, that Bram was decided under the Fifth Amendment to the United States Constitution and prior to the time when that Amendment and decisions rendered under it were made applicable to the states through the Fourteenth Amendment. Cf. Malloy v. Hogan, 378 U.S. 1,84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Shortly after Bram was decided, this Court rendered a decision in Hunt v. State, 135 Ala. 1, 8,33 So. 329, 331 (1902) which recognized the collateral benefit rule:
 The fact that incriminating statements of a defendant are made upon a promise of officers or citizens having him in custody that, if he will tell the truth, they will protect him against the wrath and vengeance of persons who are implicated, or whom his statement implicates, in the offense, does not render such statements inadmissible, if they are otherwise voluntary. *Page 373 
The promise which will render a confession involuntary, in the eyes of the law must have relation to the legal consequences of the offense itself. It must involve some assurance of benefit to the defendant in respect of the crime under inquiry, as that he will not be prosecuted or that his punishment will be mitigated. . . . The mere collateral
benefit of protection from the personal violence of those who acted with him in the commission of the crime will not suffice.
This statement of principle was unsupported by any citation of authority. Moreover, it emphasized, not the effect of the promise upon the mind of the defendant, but rather the form of the promise itself. That is, no consideration was given to the fact that such a promise might be just as conducive to a confession of the offense as would a promise relating to some mitigation in connection with that offense. Nevertheless, it was quoted as authority in a later case, Elmore v. State,223 Ala. 490, 137 So. 185 (1931). In that case the defendant was induced to confess his guilt by the threat of law enforcement officers to arrest his mother for the offense. In commenting on the effect of this inducement upon the voluntariness of the confession, a majority of this Court stated:
 A personal benefit to the accused, the saving of himself from the distress of mind caused by his mother's arrest, may be easily inferred to have been a moving inducement to the confession. But this also was a collateral benefit under this rule [requiring the promise to relate to the offense itself].
 We are far from saying that the saving of a loved one from arrest may not induce a confession, be the accused guilty or not guilty. (emphasis added)
 Under imaginable conditions, the untrustworthiness of a confession thus obtained should lead to its rejection. (emphasis added)
 But we are not impressed that the confession in the instant case should be excepted from the general rule. . . .
In dissenting from what is patently an equivocal majority opinion upon the all-inclusiveness of the collateral benefit rule, Justice Brown, joined by Justice Sayre, believed that this confession was an "exception to the rule relating to [a] promise of collateral benefits, such as that the officer will let the accused see his wife (6 Am.St.Rep. 247), or `to give the accused liquor,' or to `release him from solitary confinement and allow him to associate with other prisoners,' or to `take him to a priest' (1 R.C.L. 556, § 103), or the offer of a reward to deliver a saddle (McIntosh v. State,52 Ala. 355), or to employ the accused to commit another's crime(Stone v. State, 105 Ala. 60, 17 So. 114), or to divide a reward for detection of the guilty party (McKinney v. State,134 Ala. 134, 32 So. 726)." Justice Brown, however, predicated his dissent upon the rule of exclusion which had been recognized in Beckham v. State, 100 Ala. 15, 14 So. 859 (1893),i.e., that:
 The rule of exclusion applies where the threat is of such a nature as that from fear of it the prisoner was likely to have told an untruth, and where the threat and the confession are related as cause and effect. . . .
Thus both the majority and the minority appear to have been in agreement upon the primary issue, that is, what worked upon the mind of the defendant to induce the confession? This is established by the majority's recognition of "the saving of a loved one from arrest," obviously a collateral benefit, as leading to the rejection of a confession thus induced. It is established by the minority's tenuous assumption that the threat to prosecute the defendant's mother was, somehow, also related to the offense with which the defendant was charged. Clearly, the fact that both might have been charged with the same offense (unless the defendant confessed his guilt) did not make the implicit promise (not to charge the defendant's mother) relate to his offense, but to hers. When she was not charged, he received a collateral benefit, but that benefit was the product of a promise which was reasonably calculated to induce him to confess, for as Justice Brown sagely observed, *Page 374 
anyone lacking the great Washington's integrity would lie to protect his mother. Accordingly, the real emphasis was not upon the collateral benefit but upon the relation of cause and effect to the promise and the confession. That is, the question was whether the defendant would have confessed if the authorities had not induced his statement with the promise of the benefit, collateral or otherwise.
Several federal decisions likewise are instructive. In Rogersv. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961), a defendant confessed in order to prevent his ailing wife from being arrested for questioning. At his trial the court charged the jury that such a "deception" did not invalidate his confession unless it had produced an untrue statement. The United States Supreme Court reversed his conviction, holding that the due process standard of the Fourteenth Amendment did not turn on the probability of the statement's truth or falsity. It stated that:
 The attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to over-bear petitioner's will to resist and bring about confessions not freely self-determined — . . . .
In Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917,9 L.Ed.2d 922 (1963), the defendant was told that her children could be taken away from her upon her conviction, but that if she would cooperate she would see them again. The United States Supreme Court held that a confession elicited under such circumstances "must be deemed not voluntary, but coerced. We have said that the question in each case is whether the defendant's will was overborne at the time he confessed."
And in Haynes v. State of Washington, 373 U.S. 503,83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) an incarcerated prisoner being held incommunicado for interrogation and who had expressed a desire to telephone his wife, was told by the authorities that he could do so when he had cooperated and made a statement [of confession]. In reversing his conviction the United States Supreme Court stated:
 Confronted with the express threat of continued incommunicado detention and induced by the promise of communication with and access to family Haynes understandably chose to make and sign the damning written statement; given the unfair and inherently coercive context in which made, that choice cannot be said to be the voluntary product of a free and unconstrained will, as required by the Fourteenth Amendment.
In each of these federal cases the confession followed an offer, in one form or another, of a benefit to the defendant which was "collateral," not related to the offense with which he was charged. Nevertheless, the use of the confession so induced was sufficient to negate the judgment of conviction because the inducement affected the voluntariness of that confession, the emphasis having been placed on the effect of that inducement upon the freedom of the will rather than upon whether the subject matter of that inducement was "direct" or "collateral." The harshest sanctions which society can bring to bear upon the individual, thus, have not been allowed to depend upon the subtleties implicit in that distinction.
The Court of Criminal Appeals has held that "the promise which will exclude a confession or an inculpatory admission must relate to the crime charged." In this we have concluded that the court erred. The legal principle which should have been applied in its review, and in the trial court, should have conformed to the principle of the Rogers,' Lynumn and Haynes'
decisions, and to the Court of Criminal Appeals' encompassing the O'Tinger decision.
Additionally, the Court of Criminal Appeals found that the statement in question, because it was induced by a promise of a collateral benefit, was therefore voluntary. The trial court did not make a preliminary finding on the competency of this confession, Jones v. State, 292 Ala. 126, 290 So.2d 165 (1974), thus it appears that the criterion used by the Court of Criminal Appeals on *Page 375 
the issue of voluntariness was the "direct" or "collateral" benefit test.
Because the Court of Criminal Appeals applied that erroneous test to the facts on the issue of voluntariness of this confession, the judgment of that Court is reversed and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and BLOODWORTH, FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.
MADDOX, J., concurs specially.