[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 167 
The appellant, James Edward Morrison, was convicted of the murder of Bobby Smith, Jr., and was sentenced to imprisonment for life. Seven issues are raised in this appeal of that conviction.
 I.
We reject the appellant's contention that his challenge for cause of a veniremember should have been granted.
During voir dire of the jury venire, the prosecutor asked whether there was "[a]nyone else who for any reason would not be able to [put aside any opinions, feelings, or information heard about the case and decide the case based on the evidence and the law] or feels that we should know something about you before we strike this jury?" R. 350. No veniremember responded to this question. A discussion was then had out of the presence of the venire concerning three veniremembers who had previously asked to be excused for medical or personal reasons. When these three veniremembers had been excused and proceedings were resumed in the presence of the venire, the following occurred:
 "MR. HARGETT (District Attorney]: . . . Did somebody start to raise their hand on my last question about any special reason?
 "[Number 31]: I have talked with [the victim's] family where I work.
 "MR. HARGETT: Do you know something about the facts in this case that would cause you to have some preconceived ideas about the guilt or innocence?
"[Number 31]: No, sir.
 "MR. HARGETT: Could you decide the case fairly based on the evidence as comes from the witness stand and the law given to you by the Court without regard for anything you heard from the [victim's] family?
"[Number 31]: Yes." R. 354-55.
During defense counsel's voir dire of the venire, the following occurred:
 "MR. LOWERY [Defense Counsel]: Are any of you friends or acquaintances with either Mr. or Mrs. Smith [the victim's parents]?
"[Number 31]: Through my work.
 "MR. LOWERY: Would that acquaintance through your work in any way affect your ability to sit as a juror on this case and make a fair and impartial decision because I can tell you up front based upon what we expect the evidence to show I'll ask you to find Eddie Morrison not guilty of the charge.
"[Number 31]: I don't think so.
 "MR. LOWERY: If you were chosen to serve as a juror on this case and based upon what the law and evidence show you did, in fact, find Eddie Morrison not guilty, would you feel that you owed any of the Smith family an explanation after the trial, [Number 31]? I know it's a tough question. Do you think anything about sitting on the jury in this case might affect your ability to be completely fair and impartial?
"[Number 31]: I don't know.
"MR. LOWERY: You don't know?
"[Number 31]: No." R. 361-62.
No further questions were propounded to Number 31 on this matter by either the prosecutor, defense counsel, or the trial judge.
At the conclusion of the voir dire, defense counsel challenged Number 31 on the ground that "[s]he's acquainted with the Smith family." R. 391. This challenge was denied. After the jury was struck, but before it was sworn, defense counsel stated, "Once again I except to the Court's denying my challenge for cause to juror number 31 and state for the record before *Page 168 
the jury is empaneled I'm not satisfied with the venire." R. 393.
"[T]he mere fact that a prospective juror is personally acquainted with the victim [or his family] does not automatically disqualify a person from sitting on a criminal jury." Brownlee v. State, 545 So.2d 151, 164 (Ala.Cr.App. 1988), affirmed, 545 So.2d 166 (Ala.), cert. denied,493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989). See Howard v.Davis, 815 F.2d 1429, 1431 (11th Cir.), cert. denied,484 U.S. 864, 108 S.Ct. 184, 98 L.Ed.2d 136 (1987). Cf. Engineers of theSouth, Inc. v. Goodwin, 366 So.2d 673, 674 (Ala. 1978) (the fact that a veniremember is acquainted with an individual involved in the litigation does not, in and of itself, disqualify the veniremember); Grandquest v. Williams, 273 Ala. 140,146, 135 So.2d 391, 395 (1961) (same). Instead, the test is "whether the [prospective] juror's acquaintance with [the victim] or relative is such that it would result in probable prejudice." Vaughn v. Griffith, 565 So.2d 75, 77 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 987, 112 L.Ed.2d 1072
(1991). Accord Alabama Power Co. v. Henderson, 342 So.2d 323,327 (Ala. 1976); Grandquest v. Williams, 273 Ala. at 146,135 So.2d at 395.
The qualification of prospective jurors rests within the sound discretion of the trial judge. Ex parte Cochran,500 So.2d 1179, 1183 (Ala. 1985); Alabama Power Co. v. Henderson,342 So.2d at 327. A judge's decision on a challenge for cause "is entitled to great weight" and will not be disturbed on appeal "unless clearly erroneous, equivalent to an abuse of discretion." Brownlee v. State, 545 So.2d at 164. In reviewing a trial court's decision on a challenge for cause, "this court will look to the questions propounded [to] and the answers given by the prospective juror to see if [the trial court's] discretion was properly exercised." Alabama Power Co. v.Henderson, 342 So.2d at 327. Accord Ex parte Cochran,500 So.2d at 1188-84. These questions and answers must be viewed as a whole and not in isolation. See Ex parte Rutledge,523 So.2d 1118, 1120 (Ala. 1988); Ex parte Beam, 512 So.2d 723, 724 (Ala. 1987).
In this case, the prosecutor's specific questions to Number 31 were clearly aimed at determining whether she had any knowledge of the facts of the case that would affect her ability to be impartial. In contrast, defense counsel's questions were aimed at determining whether Number 31's relationship with the victim's family would affect her ability to be impartial. While Number 31's answers to the prosecutor's questions unequivocally established that she did not have any knowledge of the facts in the case, her answer to defense counsel's last question regarding the effect of her relationship with the victim's family was certainly ambiguous.
This Court is well aware of the principle that "[o]nce a [prospective] juror makes an initial statement that is vague, ambiguous, equivocal, uncertain or unclear or that shows confusion, it is the trial judge's function to question the juror further, so as to ascertain whether the juror can be impartial." Knop v. McCain, 561 So.2d 229, 234 (Ala. 1989). See also Wood v. Woodham, 561 So.2d 224, 227 (Ala. 1989); Englandv. State, 601 So.2d 1108 (Ala.Cr.App. 1992); Hunter v. State,585 So.2d 220, 222 (Ala.Cr.App. 1991). We find that this principle does not apply in this case because, although the meaning of the veniremember's response was uncertain, it was uncertain in a manner distinguishable from the responses in the above cases. Here, the veniremember's response did not necessarily indicate that she was uncertain as to whether her relationship with the victim's family would affect her ability to be impartial. Significantly, in his request to strike Number 31 for cause, the appellant did not specifically allege that her responses regarding the effect of her relationship with the victim's family were equivocal as to whether that relationship would affect her ability to be impartial. His objection was based only upon the ground that "[s]he's acquainted with the Smith family." R. 391.
When asked if her "work" relationship with the victim's family would affect her *Page 169 
ability to be impartial, Number 31 replied, "I don't think so." We do not understand that response to mean that Number 31 did not know whether or not she could return an impartial verdict.
Number 31 responded, "I don't know," to defense counsel's next question. When considered in the context of the question and her previous answers, this response could mean, as the appellant argues, that she did not know whether she could be completely fair and impartial as a juror. However, it could also mean that she did not know whether she thought anything about sitting on that particular jury which might affect her ability to be completely fair and impartial. Her response could also be understood as meaning that she did not know of anything that would affect her ability to be a fair and impartial juror. Furthermore, we note that defense counsel's last question, which elicited the response, "I don't know," was actually two questions — one concerning whether she would feel the need to explain an acquittal, if there was one, to the victim's family, and the other concerning whether "anything" would affect her ability to be fair and impartial — and we cannot be certain which question Number 31 was answering.
As indicated, defense counsel's questions on this subject were not as clear and straightforward as they should have been. Those questions themselves contribute to the uncertainty we have in determining the meaning of Number 31's responses. We note that when he questioned other veniremembers about their friendship or acquaintance with the assistant district attorney, defense counsel asked only whether that relationship would affect their ability to decide the case. Decisions regarding "[t]he clarity of the questions propounded" are also within the discretion of the trial court. Morris v. Zac SmithStationery Co., 274 Ala. 467, 470, 149 So.2d 810, 813 (1963). As the United States Supreme Court has observed:
 "It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination techniques that frequently are employed . . . [during voir dire]. . . . Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently. Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially. The trial judge may properly choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading."
Patton v. Yount 467 U.S. 1025, 1039, 104 S.Ct. 2885, 2893,81 L.Ed.2d 847 (1984).
 "While probable prejudice for any reason will serve to disqualify a prospective juror, qualification of a juror is a matter within the discretion of the trial court. This Court must look to the questions propounded to, and the answers given by, the prospective juror to see if this discretion was properly exercised. A reversal is not appropriate absent abuse of this discretion.
 "Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. This determination, again, is to be based on the juror's answers and demeanor and is within the sound discretioj of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence."
Knop, 561 So.2d at 232 (citations omitted) (emphasis added). As the Missouri Court of Appeals observed in a similar context, at is impossible for an appellate court to "determine if the answer ['I don't believe so'] meant that [the veniremember] had doubt that he could render a fair and impartial verdict because of his personal relationship with the prosecutor or whether it was his personal manner of speaking and indicated a positive belief that he could render a fair *Page 170 
verdict." State v. Webster, 539 S.W.2d 15, 17 (Mo.App. 1976). Here, the trial judge was in the best position to observe Number 31's demeanor and tone when she answered defense counsel's questions and to determine what her responses meant. See Morris v. Zac Smith Stationery Co., 274 Ala. at 470,149 So.2d at 813; State v. Webster, 539 S.W.2d at 17. Cf. CharlesIsrael Chevrolet, Inc. v. Walter E. Heller Co., 476 So.2d 71,74 (Ala. 1985) ("Because the trial judge here occupied the superior position of seeing the demeanor of witnesses with direct personal knowledge of the ultimate facts of the case, he was in the best position to determine the weight and credibility to be given the testimony of each witness."). Because the trial court could have understood Number 31's response as indicating that she did not know of anything that would affect her ability to serve as a fair and impartial juror, the record does not support a finding of clear abuse of the trial court's discretion.
"Under elementary rules of review, we must indulge the presumption that the trial court ruled correctly." Cooper v.State, 274 Ala. 471, 149 So.2d 834, vacated on other grounds,375 U.S. 23, 84 S.Ct. 84, 11 L.Ed.2d 48 (1963). "Substantial error is not presumed, but the burden is upon the appellant to show error." Edwards v. State, 274 Ala. 569, 570,150 So.2d 710, 711, cert. denied, 375 U.S. 882, 84 S.Ct. 152,11 L.Ed.2d 112 (1963). "It is well established that this Court will not presume error and will affirm a judgment appealed from if it is supported on any valid legal ground." Turner v. Clutts,565 So.2d 92, 94 (Ala. 1990). "The appellate court will not substitute its judgment for that of the trial judge simply because it might have reached a different result had it been in his place." Ex parte Alabama Power Co., 280 Ala. 586, 590,196 So.2d 702, 705 (1967). Where the testimony before the trial court is subject to different interpretations or is conflicting, "a reviewing court will not substitute its own judgment for that of the trier of facts, even though such court might have reached a different conclusion. There being evidence reasonably tending to support the trial court's conclusions, . . . we find no basis for disturbing its judgment based on the conclusions reached." McPherson v. Everett, 277 Ala. 519,521-22, 172 So.2d 784, 786-87 (1965). "It is not the province of this court to substitute its judgment for that of the trier of facts unless his findings are palpably wrong or an improper standard has been applied." Forest Investment Corp. v.Commercial Credit Corp., 271 Ala. 8, 12, 122 So.2d 131, 134
(1960).
We find that the appellant has failed to show that the trial court abused its discretion in refusing to grant the requested challenge for cause.
 II.
The appellant contends that the oral and written statements he gave to the police should not have been admitted into evidence.
At trial, the State introduced evidence that, while being transported to the Franklin County Jail, the appellant admitted that he had shot the victim and disposed of the body. There was also evidence that later, at the jail, the appellant gave a detailed statement concerning the events of the day of the murder and again admitted that he had shot the victim and disposed of his body. This statement, which had been reduced to writing by one of the officers and signed by the appellant, was admitted at trial. As separate issues, and for different reasons, the appellant contends that neither the oral statement given on the way to the jail nor the written statement obtained later were properly admitted.
In addressing these contentions, this Court must consider the totality of the circumstances. The State's evidence tended to show that, in July 1990, the appellant, Bobby Smith, Jr. (the victim), and Smith's wife and daughter were residing in a tenant house on Red Gate Farm in Franklin County, Alabama. The house was being rented by the victim. At that time, both the victim and the appellant were employed at Twentieth Century Furniture in Golden, Mississippi. On July 31, 1990, a note indicating that the victim had been kidnapped was found on the appellant's work station *Page 171 
at Twentieth Century. Law enforcement authorities were notified of this fact by the management of Twentieth Century. The victim's mother, wife, and sister-in-law thereafter reported that the victim had been missing since July 26.
The victim's wife informed investigators that she and the victim had had a marital dispute on the evening of July 26, and that the victim left the residence with persons unknown around 10:30 or 11:00 that night. Initially, the appellant claimed that he was in the shower when the victim left the house.
On August 3, 1990, the appellant was questioned by F.B.I. Special Agent Girsch. The appellant was also interviewed by Girsch on August 6, 1990. On that occasion Investigator Nix of the Franklin County Sheriff's Department was present. On neither occasion was the appellant in custody nor was he a suspect in any crime. However, Nix suspected that the appellant was "withholding information of some sort." R. 286.
On August 14, 1990, Investigator Nix learned that the appellant was on probation in Mississippi. He received this information from the appellant's probation officer Bill Brand. Nix then telephoned the appellant, who was then living in Mississippi, and the appellant agreed to take a polygraph examination if he could obtain permission from his probation officer to come to Alabama. Nix testified that he thought the appellant "knew it in his own mind [that under the terms of his probation, he was to remain in Mississippi because he's the one that brought up the fact [that] he would have to check with his probation officer, Mr. Brand." R. 287. On that occasion, Nix did not mention anything about the appellant having previously been residing in the State of Alabama. Several days later, after the appellant had failed to contact Nix, Nix telephoned the appellant. Nix testified that during that second telephone conversation, he told the appellant:
 "that I had learned that he was on probation in Mississippi and he'd illegally set up residence in Franklin County, Alabama, without prior approval with Mr. Brand because I checked did he [Brand] have knowledge and [sic] of him coming to Alabama, did he check through Mr. Davis and both of them said no. I told him he could be charged with an offense due to the fact there's a law if you reside in another state and you're convicted of a felony, you've got to check in and register with the sheriff of the county [in which] you're living."[1] R. 287.
Nix testified that he told the appellant that "he was being real reluctant about taking a polygraph and our suspicions were great. He was not cooperating on a major murder case. Yes, sir, If he didn't cooperate, I was going to charge him, and Mr. Brand said he thought I should." R. 288. Nix also testified that it was Brand and not himself that made "that [he would be charged if he did not take the polygraph test] clear to [the appellant]." Id. Nix testified:
 "No, sir, Mr. Brand made that clear to Mr. Morrison. Mr. Brand made contact with Mr. Morrison. I think he's the one that finally told him to get over there and take it [the polygraph] because the conversation I had with Mr. Morrison he was real concerned, and at one point he even told me that he couldn't take it because his probation officer told him he couldn't come over there. I immediately called Mr. Brand, and Mr. Brand said that's not correct. I haven't had any conversation with him. As a matter of fachorities, Mr. Brand said I'll cooperate with the authorities over there whatever." R. 288-89.
In a third telephone conversation, Nix advised the appellant of the date for the polygraph examination and the appellant "agreed and he showed up." R. 289. Nix testified that, prior to August 24, he never advised the appellant of hisMiranda *Page 172 
rights because "there was no reason because he wasn't under arrest. He wasn't being questioned as a suspect. He was only being questioned as a possible witness or someone who could add information to the solving of this case." R. 291.
On August 24, 1990, the appellant arrived at the State Trooper Post in Sheffield, Alabama. He was given a polygraph examination by Investigator Kenneth Mays of the Alabama Bureau of Investigation. The record indicates that the appellant knowingly, intelligently, and voluntarily waived his constitutional rights. F.B.I. Agent Girsch also questioned the appellant on this occasion. Investigator Nix arrived sometime during that interrogation. After being told that the polygraph test indicated deception, the appellant told the officers that he had made the "kidnapping note," that he had witnessed the murder, and that Charlie Maxwell, a friend of his and the victim's, had shot the victim. The appellant offered to show the officers where he thought the body was and drew a rough map of the area.
The appellant left the trooper post in an automobile with his step-brother. He lead the officers to the Red Gate Farm. In the woods near the victim's residence, the appellant directed the officers to the victim's body. While still in the woods, the appellant admitted that he killed the victim and disposed of the body. The appellant was then arrested and given hisMiranda rights by Investigator Nix.
En route to the Franklin County Jail, the appellant confessed that he had shot and killed the victim. At the jail, he again admitted that he had murdered the victim. At the pre-trial suppression hearing, Lieutenant Nix testified that, before taking the latter statement from the appellant, he advised the appellant of his rights and that the appellant executed a waiver of rights form. Nix stated that he ascertained that the appellant could read and write and that the appellant appeared to understand his rights. Nix testified that the appellant was coherent and did not appear to be under the influence of drugs or alcohol. Nix further testified that no one threatened or coerced the appellant into giving a statement or offered him any hope or reward to do so. The appellant gave a detailed statement in which he admitted shooting the victim behind the ear with a .22 caliber rifle that he and the victim had previously borrowed from the victim's landlord. Nix reduced this statement to writing and it was signed by the appellant.
 A. THE ORAL STATEMENT
On November 26, 1990, the appellant filed a motion for discovery pursuant to Rule 18.1, A.R.Crim.P.Temp. (now Rule 16.1, A.R.Crim.P.), requesting, among other things, that the State "disclose the substance of any oral statements made by the Defendant." R. 17. This motion was granted by the trial court on November 27, 1990. The appellant maintains that the entire substance of the oral statement introduced at trial was not disclosed to him prior to trial and, for that reason, the trial court should not have permitted the State to introduce that statement into evidence.
At the pre-trial suppression hearing held on February 28, 1991, Investigator Mays testified on direct examination that, while they were still in the woods where the victim's body was located, the appellant "admitted that he himself had killed Bobby Smith, Jr. and disposed of the body in that manner where it was found." R. 197. On cross-examination, Mays stated that the appellant had made other "general statements" at this time, including that he "had taken a terrain vehicle, a three-wheeler or four-wheeler and had taken the body to that scene and dumped it there or placed it there." R. 216. None of the other officers involved corroborated this testimony. Mays also testified at this hearing that he did not transport the appellant to the Franklin County Jail after the body was found. R. 216. Lieutenant Nix, however, testified at this hearing that the appellant was transported to the jail by Mays, along with "two Game and Fish Officers whose vehicle had tore up." R. 259-60.
The appellant was originally tried for this offense on March 14, 1990. That trial ended in a mistrial due to a hung jury. *Page 173 
Immediately prior to the instant trial, which began on April 15, 1991, the prosecutor informed the trial judge that, since the time of the February suppression hearing, "the State has learned of Larry Wilson, whose name has been disclosed to the defense as a person who overheard one of those oral statements. . . . He was not one of the parties to that hearing because we did not know that he had taken that type of role in the case. He had not given us a written report nor had I talked to him." R. 394-95.
During the second trial, the trial court conducted a supplemental suppression hearing out of the presence of the jury. At that hearing, Game and Fish Officer Larry Wilson testified that he had ridden from Red Gate Farm to the county jail with Mays and the appellant on the evening of August 24, and that he had heard the appellant tell Mays that he had shot the victim "behind the ear" with a ".22 rifle Nylon 66." R. 511-12. The appellant testified at this hearing, stating that Officer Wilson was indeed in the car on the journey to the jail, but he denied that he confessed to the murder. After a brief discussion, the trial court overruled the motion to suppress the oral statement. Both Mays and Wilson were thereafter permitted to testify as to the oral statement before the jury. Both testified to essentially the same facts as Wilson had testified to at the supplemental suppression hearing
This Court has made it clear that it "views the failure to comply with Rule 18 with particular disfavor and condemnation."Buchannon v. State, 554 So.2d 477, 486 (Ala.Cr.App.), cert. denied, 554 So.2d 494 (Ala. 1989), overruled on other grounds,Pardue v. State, 571 So.2d 333 (Ala. 1990), McLemore v. State,562 So.2d 639, 645 (Ala.Cr.App. 1989). We are not convinced, however, that this case involves an actual failure to disclose. Even assuming that it does, it would not be a matter requiring reversal. As we observed in Buchannon and McLemore, "the remedy for violations of discovery rules [rests] within the sound discretion of the trial court" and, " '[t]o support a claim for reversal of the exercise of that discretion, the accused must show prejudice to substantial rights.' " Buchannon554 So.2d at 486; McLemore, 562 So.2d at 645.
In view of Mays' testimony at the February hearing, the appellant was aware at least that early that an oral statement was alleged to have been made. Further, the oral statement closely parallels the written statement which apparently was disclosed to the appellant. Under these circumstances, we fail to see how the appellant was prejudiced by not having what he asserts was the full oral statement. Furthermore, the appellant requested only the most drastic of remedies — suppression of the statement — as opposed to a continuance or recess, which, under the circumstances, we think would have been sufficient. For these reasons, there was no error in the trial court's refusal to suppress the oral statement. Buchannon, 554 So.2d at 487;McLemore, 562 So.2d at 645.
 B. THE WRITTEN STATEMENT
The appellant contends that the written statement given at the county jail was involuntary and should have been suppressed. Specifically, he contends that this statement was the product of threats and coercion and that he was denied access to an attorney during the interrogation.
The appellant testified at the suppression hearing that, after an hour and a half or two hours of interrogation by Nix, he asked for an attorney, but Nix told him he could not have one "at that time." R. 297. The appellant also testified that during this interrogation Nix told him that
 "he knowed what happened and that he would have me, if I didn't tell him what he wanted to hear from me, that he would have me revoked on my probation in Mississippi and sent to prison on that. When I got done serving that term, I would be extradited back by the State of Alabama and convicted of a crime here and have to serve more time here." R. 298.
In rebuttal, Nix specifically denied that the appellant had asked for an attorney, that he had threatened to have the appellant's *Page 174 
probation revoked, or that he had threatened the appellant in any way. When asked if the appellant's probation had been revoked, Nix responded: "Mr. Morrison was being considered violated on August third when he had been in custody of Itawamba County. So he had knowledge of his probation being revoked twenty something days prior to my contact." R. 309.
Before an extrajudicial statement may be admitted, the trial court must determine (1) that the Miranda warnings were given and (2) that the statement was voluntarily made. United Statesv. Sims, 719 F.2d 375, 378 (11th Cir. 1983), cert. denied,465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). In this case, there is no question that the Miranda warnings were given. However, the evidence concerning the voluntariness of the statement is conflicting. When this occurs, "a question of fact is presented for the trial court." Callahan v. State,557 So.2d 1292, 1299 (Ala.Cr.App.), affirmed, 557 So.2d 1311 (Ala. 1989), cert. denied, ___ U.S. ___, 111 S.Ct. 216, 112 L.Ed.2d 176
(1990). The trial judge need only be convinced of the voluntariness of the statement by a preponderance of the evidence, see Colorado v. Connelly, 479 U.S. 157, 168,107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986), and his finding of voluntariness will be reversed on appeal only if "manifestly contrary to the great weight of the evidence." Malone v. State,452 So.2d 1386, 1389 (Ala.Cr.App. 1984). "when there is conflicting evidence of the circumstances surrounding an incriminating statement or a confession, it is the duty of the trial judge to determine its admissibility, and if the trial judge decides it is admissible his decision will not be disturbed on appeal 'unless found to be manifestly contrary to the great weight of the evidence.' " Ex parte Matthews,601 So.2d 52 (Ala. 1992).
 "In determining whether a confession is voluntary, the trial court's finding of voluntariness need only be supported by a preponderance of the evidence. Seawright v. State, 479 So.2d 1362, 1367 (Ala.Crim.App. 1985). The trial court's decision will not be disturbed on appeal unless it is manifestly contrary to the great weight of the evidence. ' "The test for the voluntary nature of an extrajudicial confession or inculpatory statement is whether in light of all the surrounding circumstances, the statement was free from inducement, threat or promise, either expressed or implied, which would have produced in the mind of the accused any fear of harm or hope of favor." ' Seawright, 479 So.2d at 1367, citing Rogers v. State, 365 So.2d 322 (Ala.Crim.App.), cert. denied, 365 So.2d 334 (Ala. 1978).
 "We note that the trial judge, as the finder of fact, determined the credibility of the witnesses. The trial court's determination regarding credibility of witnesses is entitled to great weight on appeal. Calhoun v. State, 460 So.2d 268
(Ala.Crim.App. 1982)."
Dixon v. State, 588 So.2d 903, 907 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 904, 116 L.Ed.2d 805 (1992).
" 'A confession can never be received in evidence where the prisoner has been influenced by any threat or promise.' "Holt v. State, 372 So.2d 370, 372 (Ala. 1978) (quoting Bram v.United States, 168 U.S. 532, 542, 18 S.Ct. 183, 187,42 L.Ed. 568 (1897)). However, in determining whether a confession is voluntary, the " 'true test is whether, under all the surrounding circumstances, a confession has been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor.' Wallace v. State, 290 Ala. 201, 275 So.2d 634, 636
(1973)." Ex parte Siebert, 555 So.2d 780, 782 (Ala. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 3297, 111 L.Ed.2d 806
(1990). " 'The rule is well established that where a confession has been obtained, or inducement held out, under circumstances which would render a confession inadmissible, a confession subsequently made is not admissible in evidence, unless, from proper warning of the consequences, or from other circumstances, there is reason to presume that the hope or fear, which influenced the first confession, *Page 175 
is dispelled.' " Ex parte Callahan, 471 So.2d 463, 466 (Ala. 1985). "It is also the declared law that prior unavailing threats or inducements made or offered to a defendant are not sufficient to render his confession inadmissible, if the confession was thereafter made without regard to and uninfluenced by such threats and inducements." Curry v. State,203 Ala. 239, 242, 82 So. 489, 492 (1919) (implicitly overruled as to the "collateral benefit rule" in Holt v. State,372 So.2d 370 (Ala. 1978)).
The finding of voluntariness in this case is not manifestly contrary to the weight of the evidence, and no abuse of the discretion of the trial court has been shown. No contention was made at trial and no argument has been advanced on appeal that either the appellant's oral or written confession was in any way tainted by the fact that Investigator Nix and/or Parole Officer Brand, in attempting to obtain the appellant's presence at and submission to a polygraph test, told the appellant that he could be charged with failing to register as a felon in Alabama. In any event, Investigator Nix's or Officer Brand's "threat" to charge the appellant with failing to register as a convicted felon was made an undisclosed number of days prior to August 24 when the appellant confessed. At the time this comment was made, the appellant was not in custody and was not a suspect. While the prosecution must prove the absence of any threat or coercion in establishing the voluntariness of a confession, there is no evidence or allegation that this particular comment, as distinguished from the threat to have the appellant's probation revoked allegedly made by Investigator Nix shortly before the appellant confessed on August 24, influenced the appellant's confession. It cannot be said that this comment, which was made over the telephone, " 'engineered and encouraged' [the defendant] to think that he would be 'more favorably dealt with if he [would] confess.' "Matthews, 601 So.2d at 54. We consider the facts surrounding the appellant's admission of guilt to show that that admission was " 'sufficiently an act of free will to purge the primary taint.' " Callahan, 471 So.2d at 467. Furthermore, it requires some feat of the imagination and suspension of any degree of reason to believe that the appellant would confess to murder because of a threat of either having his probation revoked or being charged with failing to register.
 III.
The appellant maintains that the trial court erred in refusing to require a defense witness to answer certain questions after she had asserted her fifth amendment privilege against self-incrimination.
Rhonda Smith, the wife of the murder victim, was called as a witness by the defense. After she was sworn, defense counsel asked her several questions concerning her current address (the Franklin County Jail), the fact that she had been married to the victim, and the various places where she and the victim had resided since their marriage. R. 765-66. Defense counsel also elicited from this witness the fact that the victim and the appellant were "very, very close, . . . just like brothers." R. 766. When defense counsel asked Ms. Smith if she had "occasion to recall the day of July 26, 1990," her attorney, who was present in court, stated that he was instructing Ms. Smith "not to answer any further questions concerning the date of this incident or the incident itself" as "[i]t might tend to incriminate her and be used against her at her own trial at a later date." R. 767. The trial court informed the jury that Ms. Smith was "awaiting trial on another indictment charging her with the offense of hindering prosecution growing out of the facts in this case," R. 768, and then permitted the appellant to make an offer of proof outside the presence of the jury.
Where a witness has claimed the fifth amendment right against self-incrimination, a defendant must make an offer of proof "to show that the expected testimony of [the] witness would not be incriminating in order to predicate error upon a trial court's refusal to compel the witness to testify." Ex parte Reeves,463 So.2d 177, 180 (Ala. 1984). In making this offer of proof, the defendant must "suggest what *Page 176 
it was proposed to prove and how it would be relevant and competent, unless the question itself gave such information."Gwin v. State, 425 So.2d 500, 509 (Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983).
In his offer of proof, defense counsel stated that he wished to "ask [Ms. Smith] about the incident regarding the fight or the altercation that she had with her husband on this particular evening. I think it's relevant to motive and I think it would show other things that were said in the nature and the extent of this argument." R. 770. Defense counsel then stated that he would like to ask Ms. Smith the following:
 1) "[A]bout the relationship with her husband prior to this date";
 2) "[I]f her husband was a dealer and seller of drugs";
 3) "[H]ad her husband ever been physically abusive to her in the past";
 4) "[I]f she was having a sexual relationship with [the appellant] at any time prior to the death of her husband";
 5) "[R]egarding any statement she gave to Dale Nix whether Dale Nix made any promises or threats to her."
R. 770-71.
Although the defendant did not testify, it appeared that his defense was that Charlie Maxwell or some other person killed the victim. Proposed questions 1 through 4 might, as defense counsel argued, have some bearing on someone else's motive to kill the victim. However, "[i]t has been held generally that the motive of another to commit the crime for which the accused is being tried, without more, is not admissible." C. Gamble,McElroy's Alabama Evidence § 48.01(7) (4th ed. 1991).
Moreover, the witness to whom these questions were sought to be propounded had been charged with hindering prosecution, which is defined as "render[ing] 'criminal assistance' to another" by means of certain specified acts. Ala. Code 1975, § 13A-10-42. Hindering prosecution is a specific intent crime, see Commentary to §§ 13A-10-42 through 13A-10-44 at 385, and we are of the opinion that, because the charges against Ms. Smith arose from the same murder for which the appellant was being tried, her answers to these questions had the potential to establish Ms. Smith's motivation for rendering aid to the appellant, which would be incriminatory. See McElroy's AlabamaEvidence §§ 45.01(1), 45.01(6). Thus, there was no error in the trial judge's refusal to require Ms. Smith to answer those questions.
As for the fifth proposed question, the appellant did not demonstrate how it was relevant to the issue of guilt. We recognize that the answer to the question could have some bearing on the voluntariness of the appellant's confession, but that question, as discussed in Part II B above, is addressed to the trial court.
 IV.
The appellant contends that the "kidnapping note" and a .22 caliber rifle should not have been admitted into evidence because the State failed to prove the requisite chain of custody.
The "analysis to be followed in deciding whether a proper chain of custody has been shown" is set forth in Ex parteHolton, 590 So.2d 918 (Ala. 1991).
 "The chain of custody is composed of 'links.' A 'link' is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: '(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.' Imwinklereid, The Identification of Original, Real Evidence, 61 Mil.L.Rev. 145, 159 (1973)."
Holton, 590 So.2d at 920.
 A. The Note
The "kidnapping note" was constructed of individual words cut from a magazine and glued to a piece of brown paper. The *Page 177 
note read: "If you people do not leave things alone with the way they are, something will be done to your family and him if you want to see him alive again." R. 145, 406. The note was discovered by the appellant at his work station at the Twentieth Century Furniture Company in Golden, Mississippi. F.B.I. Agent Girsch identified the note as "the same note that [he] received from [Chief Deputy Mike Higginbottom of the Sheriff's Department of Tsishomingo County, Mississippi], and Mr. Morrison [the appellant] who was present there also stated at that time that it was the note that he found in Mississippi, . . . on July 31, at his work station at Twentieth Century." R. 405 (emphasis added). There was no objection to this testimony. "Without objection [hearsay becomes] lawful evidence." Wilderv. State, 52 Ala. App. 157, 158, 290 So.2d 225, 227 (1974). Girsch received this note on August 3, 1990. R. 404, 653. He identified the note as "appear[ing] to be in the same or substantially the same condition as when [he] first received it." R. 404.
On cross-examination, Agent Girsch testified, without objection, that Deputy Higginbottom told him that the deputy received the note "from Gaylon Wise and Kenneth Lackey who were [the] supervisors that [the appellant] brought the note to at Twentieth Century." R. 434. After the body was discovered, the agent delivered the note to Franklin County, Alabama, sheriff's investigator Dale Nix. R. 435. Investigator Nix testified that the appellant admitted constructing the note in the written statement given August 24, 1990. R. 694.
Mrs. Shirley D. Smith, the mother of the victim, positively identified the note as the same note Mr. Wise and Mr. Lackey showed her at the plant. R. 560-61. Mrs. Smith testified that when she was shown the note she "wrote down what it said." R. 561.
In this case, the complete chain of custody required byHolton was not established because we do not know what happened to the note after it came into the possession of Investigator Nix. However, we find that this failure does not require a reversal of the appellant's conviction for the following reasons: 1) it is undisputed that the appellant constructed and made known the existence of the note; 2) the chain of custody from the appellant to F.B.I. Agent Girsch was complete, and, at trial, Girsch positively identified the note as being the same note previously in his possession; 3) Mrs. Smith positively identified the note at trial; 4) there was no expert testimony about any forensic examination of the note; and 5) there was no contention that the note was tampered with in any manner.
 B. The Rifle
The rifle was properly admitted into evidence under the above-stated principles of Holton. Furthermore, "A gun is properly admitted into evidence when it is identified at trial as being the weapon used in the commission of the offense." Exparte Jones, 592 So.2d 210, 212 (Ala. 1991). In a statement to the investigating officers, the appellant admitted that the murder weapon was "a .22 caliber Nylon 66 automatic [that] belonged to Mr. Roy Thorn." R. 691. Ray Thorn positively identified the rifle as the rifle that he loaned to the victim and that he had retrieved from the victim's wife. R. 536. Thorn maintained custody of the rifle until he gave it to Investigator Nix, who had been told about the rifle by the appellant. Nix delivered the weapon to forensic scientist John Kilbourne. R. 672. Kilbourne testified that he received the "Nylon 66 Remington .22 caliber rifle" from Nix, and that he delivered it to Brent Wheeler on August 27, 1990. R. 477-78, 479-80. Wheeler was the firearms analyist for the Alabama Department of Forensic Sciences. He testified that he received the rifle from Kilbourne and kept it under his care, custody, and control until bringing it to court. R. 494-95.
Every link in the chain of custody of the rife was established and that firearm was properly admitted into evidence.
 V.
The appellant asserts that the trial court erred in refusing to give his written requested charge on the presumption of innocence. *Page 178 
The appellant submitted 50 written requested charges, of which 43 were marked "refused" by the trial judge. R. 102-32; Supp.R. 118A-130C. Defense counsel specifically objected to the trial court's refusal to give the requested charge on circumstantial evidence. See Part VI below. As for the court's refusal to give the remainder of the requested charges, including those on the presumption of innocence, defense counsel merely requested that "the Court mark for the record that it is refusing defendant's written requested jury instructions number one through 50 which are correct statements of the law and not substantially and adequately and fairly covered in the Court's oral charge." R. 797. This objection was simply not sufficient to preserve the issue for our review.
As this Court stated in Jones v. State, 591 So.2d 569, 573
(Ala.Cr.App. 1991):
 "Under Rule 14, A.R.Cr.P.Temp. (now Rule 21.1, A.R.Cr.P.), to preserve alleged error in the refusal of requested charges, a defendant must not only object in a timely manner, he must 'state with particularity the grounds of [his] objection.' Matkins v. State, 497 So.2d 201, 203
(Ala. 1986) (emphasis omitted). An objection which merely asserts that refused charges are correct or accurate statements of law does not meet this requirement. Connolly v. State, 539 So.2d 436, 438
(Ala.Cr.App. 1988); Bogan v. State, 529 So.2d 1029, 1031 (Ala.Cr.App. 1988). Cf. Ex parte Washington, 448 So.2d 404, 406 (Ala. 1984) (in order to preserve alleged error in the trial court's oral charge, an "objection must be specific enough to point out the alleged error so as to allow the judge to correct [that] error"); Petite v. State, 520 So.2d 207, 213 (Ala.Cr.App. 1987) (same). This is especially true in cases, such as the present, where the defendant submits a large number of requested charges and most or all of them are refused. See Connolly v. State, 539 So.2d at 438." (Footnote omitted.)
In any event, we note that the trial court did, in fact, adequately instruct the jury on the presumption of innocence. See Ex parte Carroll, 407 So.2d 177 (Ala. 1981). Compare UnitedStates v. Dilg, 700 F.2d 620 (11th Cir. 1983) (total failure to charge on presumption of innocence).
 VI.
There was no error in the trial court's refusal to give the appellant's written requested instruction on circumstantial evidence. As the trial court observed during his oral charge, "in this case, there was some circumstantial evidence." R. 790 (emphasis added). However, there was also direct evidence in the form of the appellant's confessions. See Hannigan v. State,131 Ala. 29, 32, 31 So. 89, 90 (1901); Houston v. State,208 Ala. 660, 663, 95 So. 145, 147 (1923). "[W]here not all of the State's case is derived from circumstantial evidence and where[, as in this case,] the requested charges do not call for a consideration of all the evidence," the requested charges are properly refused. Johnson v. State, 497 So.2d 600, 602
(Ala.Cr.App. 1986), quoted in Henry v. State, 555 So.2d 768,771 (Ala.Cr.App. 1989). See also Houston v. State,208 Ala. at 663, 95 So. at 147; Hannigan v. State, 131 Ala. at 32,31 So. at 90.
Moreover, contrary to the appellant's assertion, the trial court did not fail to "instruct the jury on the degree of proof necessary to sustain a conviction based on circumstantial evidence." Davenport v. City of Birmingham, 570 So.2d 1298,1298-99 (Ala.Cr.App. 1990). In Davenport, we held that the trial court committed reversible error in failing to instruct the jury in this regard "and den[ying] the defendant's request for such an instruction." 570 So.2d at 1299. In the instant case, however, during the portion of his oral charge concerning circumstantial evidence, the trial judge stated:
 "The test of the sufficiency of circumstantial evidence is not whether the possibility exists that someone other than the accused committed the crime but whether the evidence excludes every reasonable hypothesis but that of the defendant's guilt, whether the circumstances as proved produce a moral conviction in *Page 179 
your minds to the exclusion of every reasonable doubt." R. 790.
This is similar to the charge given in Wabbington v. State,446 So.2d 665, 670 (Ala.Cr.App. 1983), cert. denied, 467 U.S. 1254,104 S.Ct. 3542, 82 L.Ed.2d 846 (1984), and which we found to be sufficient. We think that it was sufficient in this case also.
The appellant received a fair trial. For this reason and for those stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] In Alabama, a person who has more than two felony convictions must register with the sheriff of the county of the felon's residence within 24 hours of arrival. Ala. Code 1975, §13A-11-181. The punishment for failing to register is "a fine of not less than $10 nor more than $50 for each day of violation," and/or "imprisonment in the county jail [for] not less than 10 nor more than 30 days for each day of violation." § 13A-11-186.